## No. 9042.

### HAMILTON *v.* THE PEOPLE.

CRIMINAL ABORTION—*Evidence.*  Conviction of having procured a criminal abortion by means described.  The evidence examined and held sufficient to sustain the conviction.

*Error to Denver District Court, Hon. William D. Wright, Judge.*

Mr. C. A. PRENTICE and Mr. J. G. POWELL, for plaintiff in error.

Hon. FRED FARRAR, Attorney General; Hon. LESLIE E. HUBBARD, Attorney General, and Mr. RALPH E. C. KERWIN, Assistant, for the People.

Mr. Justice Garrigues delivered the opinion of the court.

DEFENDANT, plaintiff in error, was convicted under an information charging him with having procured a criminal abortion of Ada Williams, by means of thrusting an instrument into her private parts, with intent to procure a miscarriage, from which her death resulted.

The principal assignment of error upon which defendant relies for a reversal, is that the evidence is insufficient to support the verdict, and judgment, and that no testimony was adduced upon which any reasonable, fair-minded jury could have concluded, beyond a reasonable doubt, that the

defendant was guilty of the crime charged. This has necessitated a careful review of all the evidence introduced on the trial, which discloses the following:

Thomas and Ada Williams were husband and wife, residing in Denver. Mrs. Williams having become pregnant, was very much disturbed over her condition, owing to the fact that her mother, a resident of Nebraska, who was nearly fifty years old, had written that she was about to be confined and fearing that she would not survive the ordeal, very urgently requested Mrs. Williams to come to her; that Mrs. Williams thought she could not go, in her delicate condition, and was desirous of having a miscarriage. Sometime in the latter part of January, 1916, she called on defendant Hamilton, who was a practicing physician, and discussed her condition with him. On Sunday, February 13, 1916, she in company with her husband, again visited the doctor at his office, where she introduced her husband, and said that they had come to talk over what she had discussed with him on her previous visit. The defendant asked her if she still wanted to do what they had talked about, and she replied that she did. After discussing her condition and symptoms, she inquired of the doctor if he thought he could help her out, and he replied that he could, and told her to return on the following day, Monday. Mr. Williams asked how much the bill would be and defendant told him he "charged $25.00 for confinement cases, and this would be the same."

Mrs. Williams returned to the doctor's office on Monday at about 9:40 o'clock in the morning. Of what occurred there on that occasion, there is no direct evidence excepting that of the defendant, who, while admitting that he inserted a speculum, and made an examination of the woman's privates, and introduced a medicated tampon into her vagina, denied that he had done anything which would tend to bring about a miscarriage. On Tuesday morning Mrs. Williams was in bed when her husband went to work, although later she got up and went to the residence of a friend, and relative of Mr. Williams by marriage, where

she seemed faint and ill. Williams that morning, on his way to work, stopped at the doctor's office and paid him ten dollars on account. On Wednesday Mrs. Williams remained in bed, was taken with labor pains, and about noon was delivered of a foetus in the stage of development at about three months. Doctor Hamilton was called and the patient stated to him, or in his presence, that she had had hard work to keep the tampon in before the child was born. She also told him that along about three o'clock Tuesday morning, she had sneezed real hard, and asked him "if that is the reason that it occurred sooner than he expected it would." The defendant placed the foetus in paper, put it in the stove, and after giving some directions as to the care of the patient, left the house. On Thursday Mrs. Williams' condition grew worse, and symptoms of septicaemia developed. Doctor Hamilton was called, and then diagnosed her trouble as typhoid fever. On Friday the defendant called in Doctor Gundrum to examine Mrs. Williams, and to give his opinion as to whether or not she was suffering from typhoid, but refrained from telling him that she had had a miscarriage. The patient steadily grew worse, and Doctor Monson was called Friday evening, to whom Doctor Hamilton failed to mention that the patient had had an abortion, until after the physician had learned it from other sources. Mrs. Williams was removed to a hospital, where she died Sunday evening, February 20, 1916, from septicaemia or blood poisoning, the source of infection being the uterus.

This, in brief, was the evidence adduced upon which the people relied for a conviction and upon which the verdict was based. It seems to us to fully warrant the conclusion reached by the jury. The rights of the defendant were fully protected in the instructions given by the court. Because the jury adopted and believed the evidence of the people instead of that of the defendant, would not warrant us in reversing the case. It is the province of the jury to determine the credibility of the witnesses, the weight of their testimony, and to decide the facts, and where there is sufficient evidence to support their finding, as there unques-

tionably is in this case, we cannot interfere with their conclusion.

Other questions have been raised and argued by counsel for defendant, all of which we have carefully considered, and while there were some irregularities committed on the trial, we do not think they were of such seriousness as to constitute prejudicial error.

From the entire record we are convinced that the defendant had a fair and impartial trial that no reversible error is disclosed thereby, and the judgment must therefore be affirmed.

Judgment affirmed.

Chief Justice White and Mr. Justice Scott concur.