No. 22217.

Alex Joseph Duran, Jr. *v.* The People of the State of Colorado.
(427 P.2d 318)

Decided May 1, 1967.    Rehearing denied May 29, 1967.

Charles Ginsberg, for plaintiff in error.

Duke W. Dunbar, Attorney General, Frank E. Hickey, Deputy, Aurel M. Kelly, Special Assistant, for defendant in error.

*In Department.*

Opinion by John N. Mabry.*

By this writ of error, Alex Joseph Duran, Jr., seeks to reverse the judgment of the trial court which sentenced him pursuant to a verdict of guilty of robbery and conspiracy to commit robbery. Plaintiff in error will be referred to by name or as the defendant.

*In limine* it is appropriate to set out a statement of facts as shown by the People's evidence, and the record.

A few minutes after Ben Richtel returned from the bank to his bar and grill at 1133 Larimer Street in Denver, two men, dressed in work clothes and with guns, entered his cafe and announced "this is a stickup." They ordered Richtel, his wife, and his then customers Tony Romero and others to booths in the back of the restaurant where they were commanded by Duran to sit and remain. In the meantime, while Sandoval, an accomplice, was behind the bar collecting cash from the drawer and safe, Duran shot customer Romero through the back of the shoulder. Sandoval, however, failed to heed Duran's instructions to "get the money out of the register." As a result and as the culprits were leaving, Duran went behind the bar and took the money from the cash register. With approximately $2,390 of Richtel's money, the two men left for a nearby waiting car with running motor, allegedly driven by Chavez, and hurriedly departed the scene. Romero followed from the restaurant and observed the departing car.

The police responded promptly. The witnesses described the robbers as to size and weight; also, that one was wearing a workman's helmet, the other a castro-type cap. Both were described as having tape strips on their faces. Two witnesses stated that Duran had a mustache partially protruding from under the tape. Romero was the only witness who had a clear view of

---

*Retired district judge sitting under assignment by the Chief Justice under provisions of Article VI, Section 5(3) of the constitution of Colorado.

the getaway car. He described the car as a two-tone color with the back license plate "bended at a 45 degree angle on one side and the other side was folded in half, covering the numbers"; he could read only one number — either a 6 or an 8.

The officers began a search for the getaway car and the three male occupants. Within five minutes a red and cream two-tone Plymouth car was sighted near the scene; the driver and sole occupant was Duran. The officers followed as Duran drove into Jimmy Chavez' yard at 2784 West 14th Avenue, where he was promptly taken into custody. On the back seat of the car was a helmet identified at the trial by Richtel as the helmet worn by Sandoval during the robbery. The rear license plate on the Plymouth two-tone automobile was of the shape as had been described by Romero; the number was RY-8394. Duran was immediately searched. In his then effort to escape, the officers pursued and fired at Duran. When they caught him "he had two bullet holes in him." Duran was sent to the hospital by ambulance. Sandoval and Chavez were arrested at the home of Mrs. Martinez, a few doors away from Jimmy Chavez' home. A search of the car and of all three defendants and of the home of Mrs. Martinez disclosed no guns or money. The defendants' defense was an alibi.

Alex Joseph Duran, Jr., Domingo Sandoval and James Clifford Chavez were jointly charged with the robbery of Ben Richtel, while armed with a gun, with intent, if resisted, to maim, kill or wound him. In a second count these defendants were charged with conspiracy to commit robbery. A mistrial was declared in the first trial; a retrial was later held before another judge.

At the trial the defendants were severally represented by experienced and capable counsel. During the nine days of trial, the People's evidence was challenged in every particular and analyzed to the last detail. There were inconsistencies between the testimony of some of

the People's witnesses, and previous statements or testimony given by them.

At the close of all the evidence the defendants separately made motions for judgments of acquittal. The trial court denied the motions of Duran and Sandoval, and reserved its decision on Chavez' motion. The jury returned verdicts of guilty against all defendants on both counts; robbery and conspiracy to commit such robbery, all as charged in the information. After motions for new trial were argued, Chavez' original motion for judgment of acquittal was granted and Chavez was discharged. Duran and Sandoval were duly sentenced.

From the judgment of the court Duran prosecutes this writ of error by which he specifies four errors allegedly committed by the trial court:

1. The testimony of witness Romero resulted in reversible error;

2. and 3. There was no competent evidence of the identity of defendants, and defendants' guilt was not proven beyond a reasonable doubt;

4. The court erred in refusing to admit defendant Sandoval's exhibit 4 into evidence.

It should be observed at this point that although Duran, Sandoval and Chavez were jointly tried and convicted, Duran and Sandoval have sued out separate writs of error. At bar is a review under Duran's writ of error, notwithstanding Duran's cross references to Sandoval's interests together with his repeated advocacy in behalf of his former codefendant.

█ Duran argues that in view of the fact that his conviction was based upon Romero's testimony which, he states, the trial court found to be unbelievable, unreliable and inadequate against Chavez, therefore, the court should have found Romero's testimony was inadequate and insufficient to convict Chavez' codefendants, and hence their motions for judgment of acquittal should have, likewise, been granted. The record does not support Duran in this assertion. The only par-

ticipation Chavez is charged to have had with the actual robbery, was as driver of the getaway car. Romero's testimony relating to Chavez was uncorroborated and was directed solely to the identification of him as the alleged driver of the getaway car. The witness' view was a fleeting glance, at a distance, while under nervous stress and with an unsatisfactory opportunity for observation.

The trial court must have had the above elements in mind when it granted Chavez' motion and specifically limited the acquittal of Chavez to Romero's lack of opportunity to observe the driver of the getaway car; it stated the following:

". . . the court felt that Romero's opportunity for observation of the defendant Chavez was much less than his opportunity to observe the other two defendants. He had a very good view of Duran when Duran shot him and also he was in the same room for a period of time with the defendant Sandoval, and had an opportunity to observe Sandoval."

While Romero's identification of Chavez was uncorroborated, Duran was positively identified by Richtel and customer Whisencon, who were present during the time the robbery was taking place. Neither the record nor the remarks of the trial court can give comfort to Duran or support his claim that the evidence going to the identity of Duran and Sandoval as the robbers was insufficient as a matter of law.

For his second and third assignments of error, Duran asserts there was no competent evidence of the identity of the defendants and their guilt was not proven beyond a reasonable doubt. The defendant emphasizes that the testimony of some of the People's witnesses varied with reference to the statements given the police, evidence adduced at the first trial, and alleged inconsistent descriptions pertaining to the weight, height, and headgear of the robbers; it also varied with reference

to the color and make of the getaway car and other claimed discrepancies.

It is significant that the witnesses who were in the bar and grill observed the two robbers during the robbery, within "arms reach" of them, "face to face, not more than two or three feet" away. Romero was shot at very close range by one of the culprits. One of the assailants wore a construction type helmet, later identified at the trial as the one worn by Sandoval. Romero's description of the two-tone color of the getaway car, and its tell-tale "bended" license plate, and the number 8 as one of the numbers on the plate, was significant. The fact that Sandoval wore the helmet during the robbery, and the helmet was found in the car described by Romero, driven by Duran, not far from the scene of the crime where Sandoval was waiting with his friend Chavez, was also cogent.

Moreover, the jury may have considered it persuasive that two or more witnesses testified that during the robbery the mustache of Duran was showing beneath the tape above his mouth. That he had a mustache was vigorously denied by Duran and his witnesses, but detectives Reynolds and Scherwitz of the Denver Police Department saw Duran on an examining table at the emergency room in the hospital about two hours after he was shot. Both officers testified that Duran, at that time, had a mustache.

The defendant points out that although he and his codefendants were arrested within approximately five minutes after the robbery was reported to the police, none of the money taken in the robbery, pieces of tape, sunglasses, or the cap allegedly worn by him, were found in either the car, on him, or his codefendants, or in the house where the codefendants were arrested. The jury may have correlated the time intervening between the crime and the arrests with the distance between the scene of the crime and the place of arrest, and concluded that the robbers and the driver had time and

opportunity to separate and to also secrete incriminating evidence.

We have many times pronounced the rule that where there is competent evidence to support the verdict of the jury, the weight of the evidence and the credibility of witnesses are within the exclusive province of the jury. *St. Louis v. People*, 120 Colo. 345, 209 P.2d 538.

The jury heard the witnesses, observed their demeanor and were in a better position to evaluate the testimony and to ascertain the truth than we would be from the printed record.

In *Davis v. People*, 112 Colo. 452, 150 P.2d 67, we said:

". . . The evidence was conflicting and men's minds might well differ as to the conclusions to be drawn therefrom, but we cannot say, after reading the record, that there was not sufficient evidence to warrant the jury in finding the defendants guilty as charged. The members of the jury saw and heard the witnesses on the stand and were the judges of their credibility and the weight of the evidence, they determined the facts and unless we are willing to displace them and retry the cases upon the record presented, then the verdicts of the jury and the judgments based thereon should not be disturbed. . . ."

This case is clearly one in which the results turned upon the credibility of the witnesses. The jury apparently believed and adopted the People's evidence instead of that of the defendant. Such is the prerogative of the jury and does not warrant a reversal of the case. *Hamilton v. People*, 63 Colo. 314, 165 P. 761.

The rule of law is no different because inconsistencies in the testimony relate to the identification of the defendant as a participant in the crime. *Barr v. People*, 30 Colo. 522, 71 P. 392. As stated by this court in *People v. Spinuzzi*, 149 Colo. 391, 369 P.2d 427:

". . . It is not essential that a witness be free from doubt as to the correctness of his opinion nor that he be able to identify the accused positively, 2 Wharton's,

*Criminal Evidence,* (12th ed.) 380 § 533. The uncertainty of identification goes to the weight rather than to its admissibility. . . ."

■■ Duran's fourth assignment is directed to the trial court's refusal to admit into evidence Sandoval's tendered exhibit 4 — an unabridged transcript of the prior testimony of witnesses Richtel and Romero — for the purpose of impeaching these witnesses. There is no merit to Duran's contention on this point. Richtel and Romero, in the trial below, were thoroughly examined on inconsistencies made by them at the first trial. They denied none, and admitted or explained all of the alleged contradictory testimony called to their attention. If a witness admits having made the contradictory statement in question, there is no necessity for proving them, and such statements are inadmissible. 58 Am. Jur. *Witnesses* § 780.

■ Duran offered the entire transcript as an exhibit. It contained consistent as well as inconsistent statements, unsegregated. Prior consistent statements are inadmissible *Grandell v. Tyler*, 144 Colo. 233, 355 P.2d 1091. No proper basis was established for the introduction of this exhibit. Unless a proper foundation has first been laid by specifically calling attention of the witness to the particular time and occasion when, the place where, and the person to whom he made the statements, such statements are not admissible as an exhibit. *Ryan v. People*, 21 Colo. 119, 40 P. 775; *Jaynes v. People,* 44 Colo. 535, 99 P. 325; 58 Am. Jur. *Witnesses* § 779.

Nine days were required for the trial of Duran and his codefendants. The record is composed of six volumes — a total of more than 3200 folios. The vigor with which counsel urges the assignment of insufficient evidence, and because of the seriousness of the assertions that the defendant did not receive a fair trial, compels us to examine with great care this voluminous record. The right to a fair and impartial trial and to due process are

inherent in our system of jurisprudence, but the questions cannot always be determined by reference to general rules. The particular facts and circumstances of each case must be closely examined when a denial or a violation of this right is questioned. This we have done by a careful study of all parts of the record to which our attention has been directed by the briefs, as well as a search extending beyond the references. From such examination we find and hold that: The testimony of witness Romero did not result in reversible error; there was ample, competent evidence of the identity of the defendant Duran upon which the jury could properly return a verdict of guilty; there was sufficient competent evidence to prove the guilt of the defendant beyond a reasonable doubt; and that the defendant Duran had a fair trial.

The judgment is affirmed.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE MCWILLIAMS and MR. JUSTICE KELLEY concur.