### No. 28290

## The People of the State of Colorado v. Larry D. Edwards

(598 P.2d 126)

Decided June 11, 1979. Opinion modified and as modified rehearing denied August 13, 1979.

J. D. MacFarlane, Attorney General, David W. Robbins, Deputy, Edward G. Donovan, Solicitor General, Kathleen M. Bowers, Assistant for plaintiff-appellee.

J. Gregory Walta, State Public Defender, Craig L. Truman, Chief Deputy, Norman R. Thom, Deputy for defendant-appellant.

*En Banc.*

MR. JUSTICE CARRIGAN delivered the opinion of the Court.

A jury found the defendant guilty of three counts of selling a narcotic drug in violation of sections 12-22-302 and 12-22-322(2)(b), C.R.S. 1973 (1978 Repl. Vol. 5). On each of three separate occasions he had sold four "balloons" of heroin for $100 to an undercover agent. The defendant was sentenced to ten to fourteen years at the Colorado State Penitentiary for each count. The sentences for counts one and two, based on sales within two days, were to be served concurrently. But the sentence for count three, based on a sale two and one-half weeks later, was imposed to run consecutively.

Several issues have been raised on appeal. First the defendant asserts that section 12-22-301(25) defining "sale" is unconstitutional. Second, he claims that the People failed to prove beyond a reasonable doubt that the substance he had sold was heroin. Third, he contends that the trial court erred in limiting cross-examination of two prosecution witnesses. Finally, he alleges that the sentences were so excessive as to constitute an abuse of discretion.

We affirm the defendant's conviction. However, we hold that the trial court abused its discretion in imposing the lengthy consecutive sentence for the third transaction because all three were interrelated, albeit separate and independent, sales in a series of transactions involving the same undercover agent over a short time frame. Thus we reverse the trial court's judgment regarding the sentences.

## I.

The defendant was found guilty of three counts of selling narcotic drugs. Section 12-22-302, C.R.S. 1973 (1978 Repl. Vol. 5). Section 12-22-301(25) defines "sale" as including "barter, exchange or gift or offer therefor . . ." The defendant challenges this definition as facially overbroad, claiming that it proscribes mere speech as well as physical acts. *U. S. Const.*, amend. I and amend. XIV; *Colo. Const.*, Art. II, sec. 10 and sec. 25.

We find the defendant's overbreadth challenge unpersuasive, for he has not shown how and constitutionally protected speech could conceivably fall within the statute's purview. *People v. Weeks,* 197 Colo. 175, 591 P.2d 91 (1979). Furthermore, the defendant has no standing to raise this challenge, for it was not speech, but conduct well beyond mere speech which gave rise to his prosecution, and that conduct is clearly prohibited by the statute. He was convicted, not for speaking but for acting, *i.e.*, selling heroin in exchange for money. *People v. Stage,* 195 Colo. 110, 575 P.2d 423 (1978).

## II.

The defendant next argues that the trial court erred in denying his motion for a judgment of acquittal on the ground that the People failed to prove beyond a reasonable doubt that the substance he had sold was heroin. Specifically he contends that the opinions of two expert witnesses from the Colorado Bureau of Investigation, who concluded that the suspect powder was heroin, were based on tests with a hearsay foundation and thus were speculative and conjectural. We note from the record that the defendant did not make timely objections to this testimony, but did move to strike it after it had been admitted. In addition to questioning the admissibility of this testimony, the defendant challenges its sufficiency to support the finding that the substance involved was indeed heroin.

The trial court refused to strike the disputed evidence, ruling that the defendant's failure to object to the evidence when offered rendered it

admissible. We cannot hold that the trial court abused its discretion in so ruling.

In testing the sufficiency of evidence to support a conviction, this court must determine whether the evidence, both direct and circumstantial, viewed in a light most favorable to the prosecution, is substantial enough to support, beyond a reasonable doubt, a finding that the substance sold was indeed heroin. *People v. Pratt,* 191 Colo. 362, 553 P.2d 70 (1976). In our view the evidence here fully supports the finding.

Even if we were to assume *arguendo* that the testimony of the two expert witnesses was not properly before the trial court, there was sufficient other evidence to support a finding that the substance in question was heroin. The evidence showed that the defendant represented the substance to be heroin and admitted to the undercover agent Stallworth that he was a heroin dealer. The substance was exchanged in furtive transactions at a high price for very small quantities. Officer Stallworth testified that after each transaction, he had field tested the substance purchased, and had concluded in each instance that it was heroin. An unbroken chain of custody was established for the powder involved in each sale. Thus, even without the expert testimony, there was sufficient evidence to support a jury finding that the substance was heroin. *People v. Pratt, supra. See People v. Lake,* 195 Colo. 454, 580 P.2d 788 (1978); *United States v. Agueci,* 310 F.2d 817 (2d Cir. 1962).

### III.

The defendant next contends that the trial court erred in limiting cross-examination of two prosecution witnesses. The trial court refused to permit defense counsel to question Stallworth, the undercover agent to whom the heroin was sold, regarding his personal financial status. The defendant argues that a comparison of Stallworth's net worth with his personal income would have been relevant to the issue of his credibility. However, the trial court acted within its discretion in precluding this inquiry, for it amounted to a fishing expedition. There was no showing that the witness had committed any immoral or criminal acts which would have reflected adversely on his credibility, and absent some foundation the trial court was not required to allow cross-examination into the officer's private financial transactions. *People v. Taylor,* 190 Colo. 210, 545 P.2d 703 (1976); *People v. Ciari,* 189 Colo. 325, 540 P.2d 1094 (1975). It is elemental that a trial court has great discretion in determining the breadth of cross-examination.

The trial court also precluded defense counsel from questioning prosecution witness Biggs regarding access to and use of drugs by one Harry Cummings, an informant. The trial court ruled this line of questioning irrelevant. In efforts to explain how this cross-examination into a collateral matter with no apparent probative value could be relevant, defense counsel offered nothing but vague generalities. We hold that the trial court did not

abuse its discretion in curtailing this cross-examination.

## IV.

Finally, the defendant claims that the trial judge abused his discretion in imposing three near-maximum sentences and in requiring that the third term be served consecutively. Sale of a narcotic drug in violation of section 12-22-302 carries a possible penalty of two to fifteen years in the Colorado State Penitentiary. Section 12-22-322(2)(b), C.R.S. 1973 (1978 Repl. Vol. 5). Here the sentences were ten to fourteen years for each count. The consecutive sentence for the third count resulted in a combined maximum sentence of up to twenty-eight years. We reiterate that the three offenses constituted, in essence, a single series of sales to the same undercover agent within less than three weeks.

██ Although sentencing is a discretionary function of a trial judge, a consecutive sentence resulting in an extraordinarily long prison term must be supported by evidence in the record justifying the trial judge's action. *People v. Duran,* 188 Colo. 207, 533 P.2d 1116 (1975). As we said in *Duran,* sentencing is not a science but an art. By its very nature, therefore, it requires entrusting broad discretion to the trial judge. That discretion, however, is not *carte blanche,* for we have been charged with responsibility to exercise our sentence review function by section 18-1-409, C.R.S. 1973 (1978 Repl. Vol. 8). That statute authorizes us to:
" . . . affirm the sentence under review, substitute for the sentence under review any penalty that was open to the sentencing court other than granting probation or other conditional release, or remand the case for any further proceedings that could have been conducted prior to the imposition of the sentence under review, and for resentencing on the basis of such further proceedings." Section 18-1-409(3).

██ In undertaking sentence review, we are guided by the General Assembly's declaration of its purposes in enacting the criminal code. Those purposes include preventing the occurrence of crime through the deterrent influence of sentences and providing for the rehabilitation[1] of those convicted, or for their punishment when required to protect the public. Section 18-1-102(1)(b) (1978 Repl. Vol. 8). In addition, we are directed by section 18-1-409(1) to consider, "the nature of the offense, the character of the offender, and the public interest, and the manner in which the sentence was imposed, including the sufficiency and accuracy of the information on which it was based."

Similarly, the *A.B.A. Standards Relating to Appellate Review of Sentences* §1.2, which we approved in *Duran, supra,* provide that:

---

[1] We note that rehabilitation remains a legislative goal of sentencing as reiterated in H. B. 1589, Colo. Sess. Laws (1979) _____ (effective July 1, 1979).

"The general objectives of sentence review are:

"(i) to *correct the sentence which is excessive* in length, having regard to the nature of the offense, the character of the offender, and the protection of the public interest;

"(ii) to *facilitate* the *rehabilitation* of the offender by affording him an opportunity to assert grievances he may have regarding his sentence;

"(iii) to *promote respect for law by correcting abuses of* the *fairness of the sentencing process*; and

"(iv) to promote the development and application of criteria for sentencing which are both rational and just." (Emphasis added.)

It is against these statutory and case law standards that we must measure the instant sentence in light of the defendant's record and his crimes which gave rise to this case.

The probation report indicates that this forty-two year-old defendant had no prior felony convictions. Nor did he have any juvenile record. His entire criminal record consisted of the following five misdemeanors:

1) 1953, Gambling, $15.00 fine.

2) 1964, Gambling, $100.00 fine.

3) 1964, Vagrancy, 30 days suspended sentence.

4) 1969, Disorderly Person (possession of marijuana, six months in county jail).

5) 1972, Noise and Riotous Conduct and Resisting Arrest, $125.00 fine (of which $100.00 was suspended).

It is notable that the defendant had no convictions, even for misdemeanors, during the five years immediately preceding the instant charges.

Defendant had dropped out of high school after the eleventh grade. He then had joined the United States Air Force where he completed his high school education, earned one year of college credit and, after serving four years, received an honorable discharge.

In its presentencing investigation report, the probation department recommended "a minimum sentence to be served at Colorado State Penitentiary on all three counts." Clearly the three ten to fourteen-year sentences here imposed substantially exceeded the recommended "minimum sentence." It is the court, however, and not the probation department, in whom sentencing discretion is reposed. Having reviewed the record, we cannot conclude that the sentences were so severe in relation to the serious nature of the crimes involved as to amount to an abuse of the trial court's discretion. Therefore, we cannot disapprove the three ten to fourteen-year sentences.

On the other hand, we find no support in the record for the trial court's decision to require that the third sentence be served consecutively. There is nothing to indicate that the defendant has ever engaged in violent conduct or inflicted or threatened to inflict bodily injury on anyone. As stated, he had lived forty-two years without a felony conviction.

█ In spite of the fact that both statutes and case law direct trial courts to consider the likelihood of rehabilitation as one factor in determining an appropriate sentence, the trial judge in passing sentence stated: "Mr. Edwards, rehabilitation, frankly, at this point, is a matter of little concern to me." In our view, the trial court had a duty to be concerned about this factor as well as other factors relevant to the sentence.

As we have previously observed, "A sentence that is too long, or improperly conceived, tends to reenforce the criminal tendencies of a convicted defendant." *People v. Duran,* 188 Colo. at 213, 533 P.2d at 1119. *Duran* set out proper considerations for the sentencing judge:

"Rehabilitation is the best method for preventing crime. However, when rehabilitation fails, the sentence must serve as a deterrent to others and a means of protecting society. In short, the trial judge must balance a number of factors to determine what deprivation of liberty a particular fact situation requires. When an extended sentence, or a sentence of long duration, is imposed, there must be a clear justification, based upon fact, for the trial judge's action. The trial judge must balance the many facets which enter into a sentencing decision to achieve a result which protects the rights of society and the defendant. The sentencing decision requires that each factor before the court be weighed, *without maximizing the value of any one facet of the case.*" 188 Colo. at 213, 533 P.2d at 1119. (Emphasis added.)

Since the record fails to support the trial court's apparent conclusion that the defendant is beyond hope of rehabilitation, and fails to set out any facts justifying imposition of a consecutive sentence, we hold that the aspect of the sentence constituted an abuse of discretion.

The convictions are affirmed, and the sentences on the first two counts are affirmed. We reverse the judgment on the third count insofar as it ordered that the sentence imposed be served consecutively, and we order that the sentence be served concurrently with the other two.

The cause is remanded to the trial court with directions to amend the judgment and mittimus in conformity with this opinion.