The PEOPLE of the State of Colorado, Plaintiff-Appellee,

v.

Brian Richard MADONNA, Defendant-Appellant.

No. 79SA550.

Supreme Court of Colorado, En Banc.

Aug. 9, 1982.

---

J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., Mary E. Ricketson, Asst. Atty. Gen., Denver, for plaintiff-appellee.

J. Gregory Walta, Colorado State Public Defender, Margaret L. O'Leary, Deputy State Public Defender, Denver, for defendant-appellant.

LEE, Justice.

The defendant, Brian Richard Madonna, appeals his convictions on two counts of criminal attempt to obtain a narcotic drug by fraud and deceit, sections 18–2–101 and 12–22–319, C.R.S.1973 (1978 Repl.Vol. 8 and 1978 Repl.Vol. 5), and one count of conspiracy to obtain a narcotic drug by fraud and deceit, sections 18–2–201 and 12–22–319,

C.R.S.1973 (1978 Repl.Vol. 8 and 1978 Repl. Vol. 5).[1] He contends that the trial court erred in denying his motion to suppress an out-of-court photographic identification which he claims was illegal, and an in-court identification, which he claims was tainted by the improper photographic identification. He also claims that the court erred in admitting into evidence a transcript of a deceased witness' suppression testimony relating to the photographic identification. He challenges other evidentiary rulings regarding prior inconsistent statements and similar transactions. He contests the consecutive sentences ordered by the court.[2] Finally, he asserts he was improperly found guilty of contempt of court and improperly sentenced to a ninety day jail sentence to run consecutively to all other sentences. We affirm the convictions, but reverse the judgment of contempt and remand for further proceedings.

I.

The charges in this case arose from two separate transactions involving forged prescriptions for dilaudid, a narcotic drug. On September 21, 1977, a man who identified himself as a Denver physician telephoned the Westlake Pharmacy in Loveland, Colorado, and requested the pharmacist to fill a prescription for dilaudid. The pharmacist checked the Denver telephone directory for the doctor's name and learned that he was listed as an obstetrician and gynecologist. The pharmacist then attempted to verify the prescription by calling the doctor's office but was unable to speak with the doctor. Sometime later another call was received from a person claiming to be the doctor and the pharmacist agreed he would fill the prescription. After receiving this call, the pharmacist observed a man, who had been standing near the counter, leave the store. The pharmacist grew suspicious and followed the man out of the store in an effort to obtain a license plate number but was not successful. Another man was standing behind a telephone booth, outside the store, but he left when he saw the pharmacist.

The next day, September 22, a man identified as Robert Hanneman entered the Alco Pharmacy in Loveland and presented a prescription for dilaudid. The pharmacist checked the prescription by telephoning the clinic listed on the prescription. After ascertaining that the doctor who purportedly issued the prescription was an obstetrician, the pharmacist telephoned the police. An officer arrived and arrested Hanneman, who told the officer that three men had paid him $10 to have the prescription filled.

Several days after Hanneman's arrest, while he was being held in the Larimer County Jail, a Loveland police detective showed him photographs of the defendant and Rodney Robitz, taken by the Morgan County Sheriff's Department on September 17, 1977. Hanneman was asked if "these were the same parties involved with him in the incidents at Westlake and Alco [pharmacies]." Hanneman identified both men. Although he was certain of his photographic identification of Robitz, he was somewhat tentative in his identification of the defendant, because, as he explained, the second man had worn sunglasses the entire time Hanneman was with him. The defendant was thereafter arrested and charged.[3]

Prior to trial the defendant moved to suppress Hanneman's photographic identifi-

1. This appeal was originally filed in the court of appeals but was transferred to this court pursuant to sections 13–4–102(1)(b) and 13–4–110, C.R.S.1973.

2. One issue which we summarily dipose of here relates to the sufficiency of the evidence to support the convictions. When the properly admitted evidence is viewed as a whole and in a light most favorable to the prosecution, it is sufficient to support the convictions. *People v. Bennett,* 183 Colo. 125, 515 P.2d 466 (1973).

3. Rodney Robitz also was originally charged in the information along with the defendant. Robitz entered into a plea bargain and was not tried. Hanneman was charged with a misdemeanor offense but was not prosecuted and became a key prosecution witness. Apparently, the fourth man involved in the transactions was never arrested.

cation, arguing that it was obtained in a manner so impermissibly suggestive as to violate due process of law. He also sought suppression of any in-court identification of the defendant, arguing that such identification would necessarily be the product of the illegal photographic identification.

At the suppression hearing Hanneman testified that on September 21, 1977, three men had approached him at 19th and Larimer Streets in Denver and offered to pay him $10 for each prescription for dilaudid he was able to have filled. He agreed and they drove to Loveland where one of the men impersonated a doctor and telephoned the Westlake Pharmacy while another man went inside posing as a customer. Hanneman testified that the following day the same men picked him up in Denver and again drove to Loveland to attempt to pass a prescription at the Alco Drugstore. The man whom he knew as Brian, later identified as the defendant, wrote out a prescription in the front seat of the vehicle. Hanneman took it into the drugstore to have it filled and was subsequently arrested.

Hanneman testified that he had been with the defendant and Robitz for several hours on both September 21 and 22. Regarding the photographic identification he had made while confined in the Larimer County Jail, he stated that it had no influence on his present in-court identification of the defendant. The court denied the motion to suppress and admitted the in-court identification, ruling that it had not been tainted by the prior out-of-court identification.

On the first day of trial the prosecution informed the court that Hanneman had died of cancer. The prosecution sought to offer into evidence a transcript of Hanneman's testimony at the suppression hearing. To prove the unavailability of the witness the prosecution offered into evidence a death certificate for "Robert R. Hennemann" and presented testimony from the officer who had arrested Hanneman to the effect that the date of birth and other personal data provided to him by Hanneman at the time of the arrest matched the information on the death certificate. The court ruled that Hanneman's death had been established and his suppression testimony would be admitted under the prior testimony exception to the hearsay rule.

During the prosecution's case, Hanneman's suppression testimony, including that part relating to the photographic identification of the defendant and Robitz, was read to the jury.

The prosecution's case also included evidence of another attempted drug purchase in Brush, Colorado on September 17, 1977. In this incident a taxi driver was paid $10 to present a prescription for dilaudid at a drugstore and then deliver the dilaudid to a person whom the driver later identified as the defendant. The taxi driver's arrival at the pharmacy was preceded by a telephone call from someone purporting to be the prescribing physician. The pharmacist became suspicious of the call and contacted a police officer who arrived on the scene. With the cooperation of the taxi driver the officer was able to arrest the defendant and Robitz shortly after the driver attempted to deliver the dilaudid to the defendant at a specified location.

After the prosecution rested, defense counsel sought to impeach Hanneman's suppression testimony by offering into evidence, through the testimony of the arresting officer, Hanneman's custodial statements which allegedly were inconsistent with his former testimony. These statements related to the circumstances surrounding Hanneman's initial meeting of the defendant and his role during the incident at the Alco Pharmacy.[4] The court refused

---

4. Defense counsel made an offer of proof, through the testimony of the arresting officer, with respect to the contents of the prior statement, as follows:

"There were two statements altogether. The first one being that he was hitchhiking and that a man in a white Chevy picked him up, told him that he could make $10.00 if he got a prescription filled. They tried to get it filled in Fort Collins and the druggist said he didn't have the prescription. So, they tried to get it filled in Loveland and got picked up.

to admit the statements on the ground that defense counsel was aware of the statements at the time of the suppression hearing but failed to utilize them to impeach Hanneman on that occasion.

The jury found the defendant guilty of both counts of criminal attempt to obtain a narcotic drug by fraud and deceit and guilty of conspiracy to obtain a narcotic drug by fraud and deceit. The court sentenced the defendant to not less than four and not more than five years on each count, the sentences to run consecutively to each other. This appeal followed.

## II.

The defendant claims that the court erred in denying his motion to suppress the out-of-court and in-court identification by Hanneman because the out-of court identification was so suggestive as to violate due process of law, *U.S. Const.* amend. XIV; *Colo.Const.* art. II, sec. 25, and the in-court identification was the product of that illegal identification. We conclude that Hanneman's in-court identification of the defendant was properly admitted during the trial. In addition, we hold that under the circumstances of this case, the admission of Hanneman's pre-trial photographic identification of the defendant was harmless error, and therefore does not require a new trial.

A defendant is denied due process of law when an in-court identification is based on an out-of-court identification which is so unnecessarily suggestive as to render the in-court identification unreliable. *Manson v. Brathwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); *People v. Mack,* 638 P.2d 257 (Colo.1981). A pre-trial identification procedure that is so unnecessarily suggestive as to violate due process is inadmissible. *E.g., Foster v. California,* 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969); *Stovall v. Denno, supra.* When such a constitutional violation is established, an in-court identification by the witness is permissible only if the prosecution proves by clear and convincing evidence that the in-court identification is not the product of the unconstitutional procedure but, rather, is based upon an independent source, such as the witness' observations of the accused during the commission of the offense. *E.g., Foster v. California, supra; United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); *People v. Horne,* 619 P.2d 53 (Colo. 1980).

In this case the court concluded that Hanneman's in-court identification of the defendant at the suppression hearing was not the product of the photographic identification of the defendant held at the Larimer County Jail.[5] Although the court did not

---

The second statement given to me by Mr. Hanneman was that he was standing on the corner of 19th and Larimer Street on the 21st of September. This car stopped with three men in it. 'They asked me if I wanted to make some money, so I went with—so I went with them. They said all I had to do was get a prescription filled and I would get $10.00. We went to Lyons and Estes Park. I got the prescription filled at the Rexall Drug. We went to the Westlake center. We didn't do anything. We went to Berthoud and got scared off. We then went to Longmont and got one filled at Sullivan's Drugs.' Those were the two statements given to me by Mr. Hanneman."

5. The court ruled as follows:
"THE COURT: The question before the Court on the motion to suppress is whether the in court identification, whether it be this identification or all future court identifica-

tions, by Mr. Hanneman of the Defendant was tainted by the photo identification on September 26, 1977.

"The [prosecution has] explained that the Court should consider certain factors; that the individual Mr. Hanneman now making the identification was not contemplated to be a witness. But, in the same light, the Court considers that the witness who has made the identification at that time was a possible Defendant in a criminal action and might well hope to have other individuals identified as the real culprits and might quickly identify others as being such individuals, seeing photos of such individuals as well as markings that the individuals had been arrested by some law enforcement agency. However, the witness at that time stated that while this appeared to be one of the individuals, a Brian, who was involved, he was not sure due to sunglasses, which adds credibility to his

explicitly find the photographic identification to be unnecessarily suggestive, such is implicit in the court's ruling, and we do not disagree with that conclusion. The court did find that the in-court identification was based on an independent source—Hanneman's observations of the defendant during the two days the offenses were being committed.[6] From our review of the suppression testimony we are satisfied that there is clear and convincing evidence to support the court's conclusion. Since the in-court identification was not tainted by the photographic identification the admission of this testimony was proper. *Coleman v. Alabama,* 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970).

■ In its suppression ruling the court noted the various suggestive elements involved in the out-of-court photographic identification. The evidence showed that only two photographs were shown to Hanneman, one of each of the two suspects in the case. There is no indication in the record of any emergency which made this type of photographic confrontation imperative and prohibited the police from utilizing a less suggestive procedure in determining the witness' ability to make an identification. Both photographs were police mug shots with each subject holding a large placard bearing an identification number, the date of September 17, 1977, and the words "Sheriff's Department Morgan County, Colorado." The officer conducting the identification asked Hanneman, who was then in jail for the same offense for which the suspects were being investigated, whether the men in the pictures were the ones involved with him in the incidents at the pharmacy, thus focusing the witness' attention on identifying the subjects in a specific criminal context.

The method of conducting this identification was improper, since it tended to interject unnecessary risks of misidentification due to the suggestive circumstances, and it was error to allow admission of testimony regarding this identification. *Stovall v. Denno, supra.* Nonetheless, Hanneman's personal contact with and observation of the defendant for approximately sixteen hours over a period of two days and Hanneman's participation in the commission of the crimes in concert with the defendant and his confederates sufficiently support the reliability of Hanneman's in-court identification of the defendant. Thus, we conclude that under the facts of this case, the error in admission of the photographic identification into evidence was harmless beyond a reasonable doubt and does not require reversal of the conviction. *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *Germany v. People,* 198 Colo. 337, 599 P.2d 904 (1979).

### III.

The defendant contends that the admission of Hanneman's suppression testimony violated his constitutional right to confrontation, *U.S. Const.* amend. VI; *Colo.Const.* art. II, sec. 16, because the prosecution did not establish Hanneman's unavailability at trial and the defendant was not accorded an adequate opportunity for full and effective

statement plus the fact that he was able to identify individuals in person much better than by photographs. The witness has explained that he has an independent recollection of the Defendant from several hours being spent with the Defendant on two separate days in September of 1977.

"The Court finds that there's independent recollection of the Defendant and under the totality of all the circumstances weighed by the Court in this case that the photo identification did not in any way taint the identification by the witness, Mr. Hanneman, of the Defendant nor has the Defendant in any way been deprived of any of his constitutional rights to due process of law or to a fair trial.

"The request for suppression of the in court identification of the Defendant by Mr. Hanneman will be denied."

**6.** Hanneman had many hours in the intimate company of the defendant in which to observe him. On September 21 he was picked up by the defendant and his confederates at about 10:00 o'clock in the morning and was with them that day for approximately twelve hours. The next day, September 22, Hanneman was with the defendant from 7:30 o'clock in the morning until he was arrested at the Alco Drugstore in Loveland at about 11:00 a.m.

cross-examination at the suppression hearing. We reject these contentions.

■ To satisfy the requirements of constitutional confrontation, a party offering a witness' former testimony must establish the present unavailability of the witness. Also, there must have been a sufficient opportunity for the accused to cross-examine the witness at the former hearing so as to "afford the trier of fact a satisfactory basis for evaluating the truth of the prior statement." *Mancusi v. Stubbs,* 408 U.S. 204, 213, 92 S.Ct. 2308, 2313, 33 L.Ed.2d 293, 301 (1972). "[T]he right of cross-examination then afforded provides substantial compliance with the purposes behind the confrontation requirement, as long as the declarant's inability to give live testimony is in no way the fault of the State." *California v. Green,* 399 U.S. 149, 166, 90 S.Ct. 1930, 1939, 26 L.Ed.2d 489, 501 (1970).

■ Here the prosecution presented evidence that Hanneman had died prior to trial. Although the spelling of Hanneman's name on the death certificate (Hennemann) was slightly different from the spelling he offered at the suppression hearing (Hanneman), the officer who arrested him on September 22, 1977 testified that he gave a date and place of birth identical to those entries on the death certificate. This evidence adequately supported the trial court's finding of unavailability.[7] *Duran v. People,* 156 Colo. 385, 399 P.2d 412 (1965).

■ We also conclude that the defendant had an adequate opportunity for cross-examination at the suppression hearing so as to satisfy the other constitutional predicate for admissibility. Not only did the opportu-

nity for cross-examination exist, but, in addition, defense counsel took full advantage of that opportunity. During the suppression hearing, defense counsel probed into Hanneman's ability to make an in-court identification of the defendant and further cross-examined him on his vision and drinking habits. Under these circumstances we are satisfied that the jury was provided with an adequate basis for evaluating the truth of Hanneman's suppression testimony. We hold that the admission of this former testimony into evidence did not violate the defendant's constitutional right of confrontation. *Mancusi v. Stubbs, supra.*[8]

## IV.

The defendant argues that the court erred in rejecting evidence of Hanneman's statements made to the arresting officer on September 22, 1977, which he contends are inconsistent with those portions of his suppression testimony in which Hanneman described the circumstances of his initial encounter with the defendant and his own role in the attempt to pass the forged prescriptions. These statements are not entirely consistent with Hanneman's suppression testimony, *see supra* note 4, and they relate to material issues in this case. *See, e.g., Babcock v. People,* 13 Colo. 515, 22 P. 817 (1889); *C. McCormick, Evidence* § 37 (1972). At the time of the trial the general rule was that such statements were not admissible unless the witness had been asked about the time and place and to whom the statement was made. *See, e.g., Duran v. People,* 162 Colo. 419, 427 P.2d 318 (1967); *Balltrip v. People,* 157 Colo. 108, 401

7. Nothing in the record suggests any knowledge by the prosecution of "facts which probably would render [Hanneman] unavailable on the day of trial," thereby triggering "a duty to pursue means of preserving the witness' testimony." *Flores v. People,* 196 Colo. 565, 568, 593 P.2d 316, 319 (1979).

8. Our decision in *People v. Smith,* 198 Colo. 120, 597 P.2d 204 (1979), does not require a different conclusion. *Smith's* rationale, precluding preliminary hearing testimony to be introduced at trial if the witness is unavailable, is based upon the limited purposes of a prelimi-

nary hearing as a screening device for unwarranted charges. Considering the broader purpose of suppression hearings which involve questions of credibility and fact-finding, we see no reason to extend the rationale of *Smith* to this factual setting. This is especially true where, as here, the witness was extensively cross-examined at the suppression hearing on the very matters for which the evidence is offered at trial. *See also* C.R.E. 804(b)(1), as amended effective July 1, 1981, which would also allow admission of this testimony.

P.2d 259 (1965).[9] Defense counsel, although aware of the statements, failed to lay a proper foundation when he did not call Hanneman's attention to the statements at the suppression hearing and they were not offered into evidence at that time to provide the witness an opportunity to explain the apparent inconsistencies. Under the circumstances, we find no reversible error in the trial court's ruling on the admissibility of the prior statements.

## V.

■ We next consider whether the court erred in admitting evidence of the defendant's participation in an attempt to obtain a narcotic drug by fraud and deceit on September 17, 1977 in Brush, Colorado. We find no error in the admission of this evidence.

The Brush incident, in addition to being closely proximate in time, involved features markedly similar to the offense charged. In the Brush transaction there was a bogus telephone call from a "physician" to a pharmacist, a forged prescription for dilaudid and the solicitation of a stranger to pick up the prescription. This evidence establishes a *modus operandi* that is highly probative of the issue of identity. *See, e.g., People v. Honey,* 198 Colo. 64, 596 P.2d 751 (1979).

9. C.R.E. 806, adopted after defendant's trial, provides as follows:

> "When a hearsay statement, or a statement defined in Rule 801(d)(2), (C), (D), or (E), has been admitted in evidence, the credibility of the declarant may be attacked, and if attacked may be supported, by any evidence which would be admissible for those purposes if declarant had testified as a witness. Evidence of a statement or conduct by the declarant at any time, inconsistent with his hearsay statement, is not subject to any requirement that he may have been afforded an opportunity to deny or explain."

> *Compare,* section 16–10–201(1)(a), C.R.S.1973.

10. We find no merit in the defendant's challenge of a special legislative call session in which the General Assembly acted to delay the effective date of House Bill No. 1589, a presumptive sentencing law. This issue has previously been decided by this court. *People v. McKenna,* 199 Colo. 452, 611 P.2d 574 (1980); *see, e.g., People v. Lowery,* Colo., 642 P.2d 515 (1982).

The trial court adhered to the procedural standards of *Stull v. People,* 140 Colo. 278, 344 P.2d 455 (1959), in admitting this evidence and we find no reversible error. *Compare,* C.R.E. 404(b); *People v. Beasley,* 43 Colo.App. 488, 608 P.2d 835 (1979).

## VI.

The defendant next challenges the sentences ordered for his conviction of two counts of attempt to obtain a narcotic drug and one count of conspiracy.[10] The defendant was sentenced to three consecutive terms of four to five years for the class 5 felony convictions. The defendant argues that he was entitled to indeterminate sentencing with no minimum term, that he was unfairly sentenced to near-maximum terms without a showing of aggravating factors, and that it was an abuse of the trial court's discretion to order that the respective sentences be served consecutively.

Pursuant to section 16–11–101, C.R.S. 1973 (1978 Repl.Vol. 8), the defendant was entitled to be sentenced to an indeterminate term with no minimum unless at the time of the conviction he had a prior conviction for a felony which occurred within five years prior to the date the present offense was committed.[11] The attempt and conspir-

11. Section 16–11–101, C.R.S.1973, provides in part:

> "(b) . . . In class 4 and class 5 felonies in which no mandatory minimum sentence is required, the court shall impose only a maximum sentence to imprisonment which shall be no more than the maximum sentence provided by law for violation of the statute involved and which shall be no less than one-third of the maximum sentence provided by law for violation of the statute involved . . . ."

> * * * * * *

> "(d) A person who has been previously convicted of a felony in this state or in another jurisdiction, based upon an offense which occurred within five years prior to the date of the offense for which he is being sentenced, shall not be eligible for an indeterminate sentence, notwithstanding the institution to which he is sentenced . . . ."

> Though in effect at the time the defendant was sentenced, section (d) was repealed effective July 1, 1979.

acy offenses were committed on September 21 and 22, 1977; the jury verdict was returned on August 18, 1978; and the defendant was sentenced on December 6, 1978.

At the sentencing hearing in December of 1978, evidence was introduced that on October 2, 1978 defendant Madonna had entered a guilty plea in Nebraska to a felony which had occurred on August 22, 1977. The defendant had not been sentenced on the Nebraska charge at the time he was sentenced on this case.

The defendant argues that since he had not been sentenced, his Nebraska guilty plea did not amount to a "conviction" within the language of section 16–11–101, *supra,* n. 11, for consideration in this case. Thus, he argues, he was entitled to an indeterminate sentence for each class 5 felony.

■ We find no merit in this argument. The statute does not require that the sentencing for the prior conviction antedate the sentencing for the later conviction. The statute instructs that if the defendant was previously convicted of an offense which occurred within five years prior to the date of the offense in the instant case, he is ineligible for indeterminate sentencing. Since it is undisputed that the defendant entered his guilty plea to the Nebraska charge prior to the date that he was sentenced in Colorado, the defendant was ineligible for an indeterminate sentence. We hold that the guilty plea in the Nebraska case constituted a conviction within the meaning of the statute.

The defendant also argues that the imposition of three consecutive near-maximum terms was an abuse of discretion. *See, e.g., People v. Edwards,* 198 Colo. 52, 598 P.2d 126 (1979). Factors that he urges us to consider include the fact that the attempts and the conspiracy took place within a twenty-four hour period; that there were no violent or aggravating factors; that Madonna's record included a 1963 conviction for check forgery, a 1973 conviction for extortion, and the 1978 Nebraska conviction for feloniously entering a building; that Madonna was at the time of sentencing a married man, thirty-five years of age, and

the father of four children. He argues that the trial court record does not support the conclusion that he was a hardened criminal without hope of rehabilitation and accordingly the consecutive near-maximum sentences were not warranted.

■ The trial court has wide discretion in sentencing and absent a finding of abuse of discretion we will not substitute our judgment for that of the trial judge. *See, e.g., People v. Trujillo,* 627 P.2d 737 (Colo.1981). On appellate review of a sentencing decision, we may properly consider "the nature of the offense, the character of the offender, and the public interest, and the manner in which the sentence was imposed, including the sufficiency and accuracy of the information on which it was based." Section 18–1–409(1), C.R.S.1973 (1978 Repl.Vol. 8). We are concerned with the sentencing goals of deterrence, punishment, rehabilitation, and protection of the public. *See* section 18–1–102(1)(b), C.R.S. 1973 (1978 Repl.Vol. 8); *see also People v. Edwards, supra; People v. Duran,* 188 Colo. 207, 533 P.2d 1116 (1975).

■ The pre-sentencing report revealed that the defendant had been arrested on numerous occasions for drug-related offenses prior to his arrest on these charges. This record, considered with his three prior felony convictions, does not lend support to the defendant's plea that he was a good candidate for rehabilitation. Moreover, the pre-sentencing report indicated that Madonna suffered from an acute drug problem and that his actions were often motivated by his need for drugs. Based upon this record, we cannot say that as a matter of law the trial court abused its discretion in fixing near-maximum terms for each conviction. *People v. Valencia,* 630 P.2d 85 (Colo.1981); *People v. Colasanti,* 626 P.2d 1136 (Colo.1981).

■ In addition, we find no reversible error in the order imposing consecutive sentences. *People v. Soper,* 628 P.2d 604 (Colo. 1981). Although both attempt counts were related to a single conspiracy to obtain narcotics through fraud and deception, each

criminal act was sufficiently separate so as to be punishable consecutively. Each incident involved a different, although similar, occurrence, and the proof for each attempt was separate, involving different times, places, and evidence of the attempt. *See, e.g., People v. Anderson,* 187 Colo. 171, 529 P.2d 310 (1974). In addition, the conspiracy conviction was "a separate and distinct offense from that which is the object of the conspiracy, and as such may be punishable by a consecutive sentence." *People v. Morgan,* 189 Colo. 256, 258, 539 P.2d 130, 131 (1975); *DeBose v. People,* 175 Colo. 356, 488 P.2d 69 (1971); *compare, People v. Blair,* 195 Colo. 462, 579 P.2d 1133 (1978); section 18–1–402(3), C.R.S.1973 (1978 Repl.Vol. 8). Under the circumstances we find no abuse of the trial court's discretion in ordering the consecutive sentences.

### VII.

The remaining issue we consider here is the validity of a sentence of ninety days for contempt of court which the defendant was ordered to serve because he failed to appear at his sentencing hearing on October 5, 1978. The defendant was free on bond and arrived at the sentencing hearing one hour late. The sentencing hearing was reset for one hour later, but the defendant failed to appear. The court ordered a citation to be issued to the defendant to show cause why he should not be held in contempt of court for his failure to appear. The citation was never served on the defendant.

At the sentencing hearing held on December 6, 1978, the same judge imposed a ninety day jail term on the contempt charge, to run consecutively to all other sentences.

 The People have confessed error and agree that the procedural deficiencies require that the judgment of contempt be vacated. The failure of the defendant to appear as ordered by the court may constitute an indirect contempt of court. *People v. Palmer,* 42 Colo.App. 460, 595 P.2d 1060 (1979); *Losavio v. District Court,* 182 Colo. 180, 512 P.2d 266 (1973); *Harthun v. District Court,* 178 Colo. 118, 495 P.2d 539

(1972). As an indirect contempt, the procedure prescribed by C.R.C.P. 107(c) and (d) must be followed. Moreover, if the People pursue the contempt matter in this case on remand, then a different judge than the one who issued the citation should preside at the hearing. *Ealy v. District Court,* 189 Colo. 308, 539 P.2d 1244 (1975); *Harthun v. District Court, supra.*

### VIII.

We have considered the other arguments for reversal raised by the defendant and find them to be without merit.

We affirm the judgments of conviction, but reverse the judgment of contempt and remand for further proceedings in accordance with the views expressed in this opinion.

DUBOFSKY, LOHR and QUINN, JJ., dissent.

QUINN, Justice, dissenting:

Although the majority determines that Hanneman's photographic identification of the defendant was unnecessarily suggestive and testimony regarding this identification should not have been admitted at the defendant's trial, it nevertheless concludes that the admission of this testimony was harmless error. With this conclusion I disagree. In my view the admission of evidence relating to the out-of-court identification cannot be considered harmless beyond a reasonable doubt and, under these circumstances, the defendant should be granted a new trial.

In determining whether the admission of constitutionally tainted evidence is harmless, the critical inquiry is whether the prosecution, as the beneficiary of the constitutional error, is able to establish "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 825, 828, 17 L.Ed.2d 705, 710 (1967); *see also Germany v. People,* 198 Colo. 337, 599 P.2d 904 (1979). The record in this case belies the notion that the admission of the tainted out-of-court identifica-

tion evidence was harmless error under the *Chapman* standard.

The identification of the defendant as the author of the forged prescriptions was the critical issue at trial. Hanneman's suppression testimony placed the defendant at the scene of the offenses and directly implicated him in the crimes charged. The evidence relating to Hanneman's out-of-court photographic identification was used by the prosecution to bolster Hanneman's in-court identification of the defendant at the suppression hearing. Without the out-of-court identification evidence one can only speculate as to what verdicts the jury might have returned on the three counts. Considering the significance of the identification issue to this case, I am not convinced beyond a reasonable doubt that the admission of the unconstitutionally suggestive photographic identification did not contribute to the jury's verdict.

That there might be evidence sufficient to support the conviction apart from the tainted out-of-court identification is not determinative of the harmless error issue. A new trial is the only appropriate remedy to cure the constitutional infirmity which occurred here.

I am authorized to say that Justice DU-BOFSKY and Justice LOHR join me in this dissent.