Appellant Jon Dale Johnson was convicted of violating the controlled substances act and was sentenced to 6 years' imprisonment in the penitentiary. From his conviction and sentence he pursues this appeal.
 I
Johnson first contends that a defective warrant of arrest was issued in this case, and that it was defective upon two grounds:
 1. That the arrest warrant affidavit is a bare bones affidavit which does not set out facts sufficient to justify the issuance of the warrant.
 2. That because the issuing magistrate was the wife of the affiant officer, she might not be "neutral and detached."
The arrest in this case, however, was accomplished by officers at the moment a sale was being made to an informant, one Andy Grissett, by appellant Johnson. The agreement with the informant was that he was to give the key words "that is some real good shit," and the police officers on surveillance would rush in and arrest the seller. The testimony was that when the informant counted out $280 of the money, officers proceeded to move in. At this point, the appellant grabbed the sack with the alleged marijuana in it and threw it away, but it was promptly recovered.
Section 15-10-3, Code of Alabama 1975, sets out the law for arrests without a warrant. It says in part:
 "An officer may arrest any person without a warrant, on any day and at any time, for
 "(1) any public offense committed or a breach of the peace threatened in his presence;
 "(2) when a felony has been committed, though not in his presence, by the person arrested;
 "(3) when a felony has been committed and he has reasonable cause to believe that the person arrested committed it;
 "(4) when he has reasonable cause to believe that the person arrested has committed a felony, although it may afterward appear that a felony had not in fact been committed, or
 "(5) on a charge made, upon reasonable cause, that a person arrested has committed a felony."
The officers, listening to their radio, the transmitter of which was concealed on Grissett's person, acted lawfully in rushing in and effecting the capture and arrest of the appellant. Securing a warrant of arrest afterwards, even if the supporting affidavit was defective, did not invalidate the earlier warrantless arrest for a public offense committed in the officers' presence.
 II
Appellant also contends that he was entrapped. The informant, Andy Grissett, was under indictment for burglary and theft. He offered to cooperate with the police department by purchasing drugs from suspected dealers. In this case, Grissett went to the house of appellant Jon Dale Johnson saying that he wanted to buy some marijuana. This, however, does not constitute entrapment. The defense of entrapment is not available where a law enforcement officer does not induce the commission of the offense but merely affords an opportunity to one who already intends to violate the law. Owens v. State, 291 Ala. 107, 278 So.2d 693 (1973); Watson v. State,439 So.2d 762 (Ala.Cr.App. 1983). For the prospective buyer of contraband to make the initial contact with the trafficker is not an "inducement" as is contemplated in the definitions of the defense of entrapment. A drug transaction may be initiated by an undercover agent without a defendant's being "instigated, induced, or lured" as those words are generally used in the definition of the defense of entrapment. *Page 571 
 III
Appellant next contends that he was materially injured in the trial of his case by the failure of the state to comply with the court's order of discovery.
A motion for discovery was filed and granted entitling counsel for the appellant to inspect and copy the results or reports of physical examinations, mental examinations, scientific tests, and scientific experiments. The above items were subject to discovery if they were made in connection with this particular case, if they were within the possession, custody or control of the state, and if their existence was known to the district attorney. This order comported with Rule 18.1(d), Alabama Temporary Rules of Criminal Procedure.
Rule 18.3, Alabama Temporary Rules of Criminal Procedure, imposes a continuing duty to notify the court and the opposing party of the existence or receipt of any additional evidence that may be discovered either prior to or during trial. Rule 18.5(a) provides that if at any time during the course of the proceedings, it is brought to the attention of the court that a party has failed to comply with this rule, the court may enter such an order as the court deems just under the circumstances.
In this case, the original response to the discovery motion was that the bag containing the alleged marijuana had been sent for an examination of fingerprints. The test came back showing that the appellant's fingerprint had been found on the bag, but contrary to Rule 18.3, this information was not communicated to the appellant or his counsel. During the cross-examination of Officer Gary Hutcheson of the Andalusia Police Department, counsel for the defense, in reliance on the court's order that any such information would be furnished to him, questioned the officer as follows:
 "Q: What, if anything, did you do with the brown paper sack that you say you found?
 "A: This brown paper sack here; I marked it as evidence, attached a letter to it for fingerprints to be lifted from the baggies that was in the paper bag. For the baggies to be sent to Montgomery for comparison of prints.
"Q: What, if anything, happened then?
 "A: The baggies come back with Jon Dale Johnson's prints on the bags of marijuana.
"Q: Is that right?
"A: Yes, sir.
"Q: You have that report?
"A: Yes, sir. Here is one of the reports."
This evidence of fingerprints on the "baggie" of marijuana was not presented during the direct examination of this witness by the state, although it was damning evidence. It was doubly damning when it was left to be brought out on cross-examination by the unsuspecting defense counsel, who was relying on the law and good faith compliance by the state. However, in light of the eye witness testimony of the informant, Andy Grissett, who made the buy, and the testimony of the officers who closed in upon the scene and arrested the appellant, the evidence of the fingerprint connecting the appellant with the alleged marijuana was merely cumulative. The testimony was that he grabbed the bag and threw it into some bushes. The state's case was completely made out as to possession and willingness to sell the substance through all of this evidence. We hold that there was error in this case but error, under these circumstances, not injurious to the appellant. The Alabama Temporary Rules of Criminal Procedures were lawfully adopted by the Supreme Court after being thrashed out and recommended by a bar committee in which all points of view were represented. It is generally and accurately perceived that in a spirit of compromise, certain concessions were made by participants resulting in the recommendation of rules providing for appeals by the state of adverse rulings in certain circumstances, on the one hand, and on the other, certain discovery by the accused. These rules are the law. Therefore, it is the duty of the courts to enforce them and the duty of the bar to conform to them. *Page 572 
 IV
In this opinion, reference has been made to the "alleged marijuana." The informant who "made the buy" testified that the subject material inside the paper sack and also inside the "baggies" smelled like marijuana. One of the officers, who had been an officer for 19 years, testified that the substance looked like marijuana. There was also an attempt to get the report from the state crime laboratory into evidence, to prove what was in a brown paper grocery bag. While Mr. Joe Saloom, director of the laboratory, was listed as a state's witness, neither he nor anyone else appeared to testify that the contents were examined and found to be marijuana nor that the bag displayed in court held the same substance as that examined. No one was present to prove the report. What was in the grocery bag other than another grocery bag? Officer Hutcheson testified that Officer Treadaway took the alleged marijuana to the crime lab at Enterprise, Alabama, in a big brown paper sack. The following occurred:
 "Q: And did you carry a big brown paper sack over to the Enterprise lab?
"A: Yes, sir.
"Q: Is this the big brown paper sack?
"A: It was one [of] the sacks.
"Q: Well, was this the sack that was in the sack?
"A: I did not see the sack that was in the sack.
"Q: What was it?
 "A: It was in another brown paper bag that Investigator Gary Hutcheson gave to me to carry to the lab."
This was the extent of the identification of state's exhibit 1. The officer never did identify the container or its contents as being the asme as were taken to the lab. We find an inadequate predicate was laid for the receipt into evidence of this exhibit.
As regards the laboratory report, the following occurred:
 "Q: Now I'm going to show you what has been marked as State's Exhibit Two and ask you if you recognize that?
"A: Yes, sir. This is a report from the lab.
 "Q: And what case number is up in the right hand corner?
"A: 85-10877.
"Q: And is that the number on this bag?
"A: Yes, sir. It is.
 "Q: Okay. And that is the number that is on this bag?
"A: Yes, sir. It is."
 [This question and answer were then repeated twice more.]
". . .
"Q: Okay. How much marijuana is all of this?
 "A: The lab report says the weight is three eighty-one point five.
 "MR. JOHNSON: We object to him reading from the report if he has no personal knowledge.
 "MR. LANIER: Well, we are going to offer the report at this time, Your Honor.
 "MR. JOHNSON: We object to the introduction of the report and for grounds we are to assign on the basis, if it please the Court. One, Mr. Treadaway testified that the bag that was carried was the same bag that is produced here today, if it please the court. Number two, there is a break in the chain of custody. Number three, we are going to object to the introduction of this report because there is no indication contained therein that this material has been analyzed under any scientific basis whatsoever. And further, we submit that that is denying the defendant due process of law in the absence of any person who conducted any alleged investigation or chemical analysis or toxicological analysis contained therein.
 "THE COURT: Did I understand you to say that the paper bag that Gary Hutcheson gave you is what you carried to the lab?
 "MR. TREADAWAY: Yes, sir. And the bag that he gave me, that bag was inside of another bag. *Page 573 
"THE COURT: I overrule.
 "MR. JOHNSON: And note our exception, Mr. Reporter.
 "THE COURT: All right. You have got it in the record. You have anything else?
 "(At which time document was marked and received into evidence as State's Exhibit 2)
 "MR. LANIER: Just one other thing, Judge. The state offers State's Exhibit One at this time, and I think it has been previously identified and the state offers State's Exhibit One.
 "MR. JOHNSON: We renew out objection, your Honor.
"THE COURT: Did he get it back?
 "MR. LANIER: I think they have all recognized it as being the same bag.
 "THE COURT: All right. Do you object at this time?
 "Q: Did you go over to the lab and get this bag back?
"A: No, sir.
"Q: Who did?
"A: I don't know, sir.
"Q: Okay."
During further cross-examination of Officer Treadway the following additional testimony was elicited concerning the bag, the contents, and the report:
 "Q [BY MR. JOHNSON]: Were you present in Enterprise at the Alabama Department of Forensic Science and Toxicology Laboratory?
"A: Was I present?
"Q: When any examination was done?
"A: No, sir. I was not.
"Q: Are you a qualified trained chemist?
"A: No, sir. I am not.
 "MR. JOHNSON: I believe that's all we have for this witness."
"REDIRECT EXAMINATION
"BY MR. LANIER:
 "Q: Well, based on your prior experience as a police officer do you have an opinion as to what that green leafy substance is in that brown bag up there?
 "A: I did not see the green leafy substance before I carried it to the lab.
"MR. LANIER: That's all. No other questions.
"THE COURT: You may come down.
Thereafter, out of the presence of the jury, the following occurred:
 "MR. JOHNSON: At the conclusion of the State's case we move for judgment of acquittal for failure of the State to prove a prima facie case, failure to link up the marijuana with this defendant, and failure to show that this marijuana examined was the same marijuana, and a break in the chain of custody, if it pleases the court.
"THE COURT: It will be denied."
Since Officer Treadaway, during this testimony said that he did not have an opportunity to observe the plant material before it was taken to the lab, the proof that the substance was marijuana consists of three things: that it looked like marijuana to Officer Hutcheson, that it smelled like marijuana to the informant, and that the seller and buyer acted as if it were marijuana. There was no foundation laid for receipt of the laboratory report on the alleged marijuana into evidence. It was merely hearsay. The contents of the report were never proved in any manner under the laws of evidence. As an exhibit, the report went with the jury to the jury room, and established a key element of the state's case — that the paper bag contained marijuana. An essential element for proof of a violation of § 20-2-70, Code of Alabama 1975, was lacking, that being that the substance was actually a controlled substance. There was a failure to prove that the container, the large brown paper sack and contents that were delivered to the crime lab in Enterprise were the same as the sack and contents that appeared in court. There was a complete break in the chain of custody. Proof of an uninterrupted chain of custody is essential. Fleming v. State, 470 So.2d 1343
(Ala.Cr.App.), cert. *Page 574 
denied, ___ U.S. ___, 106 S.Ct. 164, 88 L.Ed.2d 136 (1985).
The able district attorney made a final effort to save his case by seeking to establish by the last state's witness, an officer, that he was an expert in recognizing marijuana. This effort, of course, resulted in the officer testifying that he never saw the substance before it got to the crime lab.
In light of the foregoing, we have no choice but to reverse and remand this case for further proceedings not inconsistent herewith.
REVERSED AND REMANDED.
All the Judges concur.