The appellant was indicted for manslaughter, in violation of § 13A-6-3, Code of Alabama 1975. He was found guilty of vehicular homicide and was sentenced to five years in the State penitentiary. His sentence was split and he was ordered to serve 90 days in a "jail-like facility" and was then to be placed on formal probation. His probation was conditioned on staying out of trouble and completing a 13-month course at the Outreach Program. He was further ordered to pay $1000 under the Crime Victims Compensation Act and to pay the cost of the proceeding.
 I
The appellant argues that the trial court erred in allowing a police officer to give his opinion of the speed of the appellant's vehicle based on using a formula involving the impact on the vehicle struck. The facts surrounding the automobile accident indicate that a large truck used for gathering trash by the City of Mobile, which carried a "cherry picker," was situated in the outside lane of traffic with its hazard lights operating. The appellant was driving a Toyota Celica; he approached the trash vehicle from the rear; and, although the driver of the trash vehicle testified that the inside lane was open, the appellant failed to pass the trash truck and hit it from the rear. A girl in the passenger seat of the appellant's vehicle was killed, as well as a boy who was riding in the back seat. Beer cans were found in the automobile, as well as hand-rolled cigarettes, a purse containing a "baggie" with a "green leafy substance" inside, and a "roach," which an officer identified as marijuana. The officers also testified that the appellant "went berserk" after the accident and appeared to be under the influence of narcotics.
The driver of the trash truck testified that from his experience in having observed cars and trucks in motion and having driven automobiles, he estimated the speed of the Toyota at approximately 70 miles per hour. Thereafter, a police officer who investigated the scene of the accident testified that he had investigated several hundred accidents. He stated that he had attended schools on the investigation of traffic accidents, including the Institute of Traffic of Northwestern University in Illinois, an advanced accident investigation course in Jacksonville, Florida, with the Institute of Police Technology and Management, and a course on accident reconstruction in Jacksonville, Florida with the Institute of Police Technology and Management. He testified that, during these courses, he was taught how to calculate the *Page 538 
speed of an automobile at the time of a collision and what factors or evidence on which to concentrate in determining speed. The officer testified to the specifics of his information gathering in the present accident, the measurements he made, and the photographs he observed. Generally, the formula which the officer used involved determining the weights of the two vehicles, determining the coefficient of friction of the road, and determining the distance which the truck was moved by the impact. The officer testified that this method has been accepted and used in the investigative community and that its reliability has been established. The officer concluded that the appellant's vehicle must have been traveling at approximately 56 to 61 miles per hour at the time of impact.
The appellant argues that the officer should not have been allowed to give his opinion as to the speed of the vehicle, because, he argues a proper predicate was not laid for the admission of such testimony. The leading case concerning expert testimony as to the estimated speed of an automobile at impact is Maslankowski v. Beam, 288 Ala. 254, 259 So.2d 804 (1972). InMaslankowski, the Court determined that expert testimony was a proper means of determining such estimated speed, as "a jury would not be equally competent to reach a conclusion from the facts of the case." 288 Ala. at 264, 259 So.2d at 813. We find that here, as in Maslankowski, there were sufficient scientific data available upon which a reasonably accurate opinion as to the speed of the appellant's vehicle could be formulated. We base this conclusion on the officer's testimony concerning his measurements, the weights, the coefficients, and his analysis of the photographs. Furthermore, the officer testified that there were some skid marks, although he did not use them in his formula. We find that this officer was a properly qualified expert. His training had surpassed that of the general "investigating officer." The officer presented his qualifications and experience and also explained his methods in detail. Any objection to the inadequacy of facts or data would go to the weight of the evidence rather than its admissibility.Maslankowski v. Beam, 288 Ala. at 265, 259 So.2d at 814.
The trial court did not abuse its discretion in allowing the officer to testify to his calculations concerning the speed of the appellant's automobile. As the Court stated inMaslankowski:
 "This Court does not wish to be understood as holding that in all cases of automobile collision such evidence by any self-proclaimed expert is admissible, but as in every civil case where expert testimony is presented, the responsibility is on the trial court to satisfy itself of the requirements of the law regarding admissibility. If the responsibility is exercised with care so that reasonable expert testimony is presented based upon reasonably sound scientific approaches, then this Court will not reverse in the absence of an abuse of discretion."
288 Ala. at 269, 259 So.2d at 818.
 II
The appellant argues that the trial court erred in allowing evidence of the refusal of the appellant's father to allow a blood alcohol test or drug urinalysis on the appellant. The record indicates that after the accident, the appellant was taken to the hospital. Later, with his father present, he was approached by a nurse and a police officer. The nurse asked permission for tests to determine the presence of alcohol or drugs in the appellant for law enforcement purposes, but the appellant's father refused to allow the test. The appellant remained silent. The State attempted to introduce the father's refusal at trial, and defense counsel objected on the grounds that the father's refusal was irrelevant and had no probative value. The trial court overruled defense counsel's objections.
The father's refusal to allow his son to take the test was properly admitted for the jury's consideration, as it was relevant toward the determination of whether the appellant was under the influence at the time of the accident. The test of relevancy in Alabama is liberal and "a fact is admissible if it has any probative value, however slight, upon a matter in the case." C. *Page 539 
Gamble, McElroy's Alabama Evidence, § 21.01(1) (3rd ed. 1977). Relevancy is distinguishable from weight or proof. 1A Wigmore,Evidence § 29 (Tiller's rev. 1983).
 "[J]udges constantly find it necessary to warn us that their function in determining relevancy is not that of final arbiters but merely of preliminary testers; the evidentiary fact offered does not need to have strong, full, superlative, and probative value and does not need to involve demonstration or to produce persuasion by its sole and intrinsic force but merely needs to be worth consideration by the jury. It is for the jury to give the fact the appropriate weight in effecting persuasion."
Id.
The father's refusal was admissible because the State proved its relevancy. The refusal was in the nature of a tacit admission by the defendant. C. Gamble, McElroy's AlabamaEvidence § 193.01 (3rd ed. 1977). Contrary to the defendant's argument on appeal, there was evidence that the defendant was conscious when the tests were requested to and capable of responding to the request. Additionally, there was evidence that the father had observed and talked to his son before he refused to allow the tests to be performed.
There is a logical relationship between the father's refusal to allow his son to take the test and the ultimate inference that his son was under the influence. Therefore, the testimony was relevant and properly placed before the jury for its determination of how much weight to accord the evidence. We find no abuse of discretion by the trial court in allowing the testimony into evidence.
 III
The appellant argues that the trial court erred in charging the jury that vehicular homicide is a lesser-included offense of manslaughter and, further, that his motion for new trial based upon this point should have been granted. The appellant states in his brief that he is aware of Ex parte Jordan,486 So.2d 485 (Ala. 1986), in which the offense of vehicular homicide was determined to be a lesser-included offense of the charge of murder, but he asks that this court "rethink this opinion, because it makes absolutely no sense whatsoever to hold that vehicular homicide is a lesser-included offense of murder, manslaughter and criminally negligent homicide." Appellant's brief at 26-27. The appellant asks that the law should revert to the holding in Whirley v. State,481 So.2d 1151 (Ala.Cr.App. 1985), wherein homicide by vehicle was determined not to be a lesser-included offense of murder. However, this court is bound by the decisions of the Alabama Supreme Court and, therefore, this issue is settled. Jones v.State, 527 So.2d 795 (Ala.Cr.App. 1988).
 IV
The appellant argues that the trial court erred in refusing to allow him to introduce evidence that, after the accident, the City trash trucks were equipped with revolving lights and large reflective decals to make them more visible to oncoming traffic. The appellant acknowledges that such evidence is inadmissible in a civil trial,[1] but argues that the civil rules should have no application in a criminal trial.
There was evidence that the trash vehicle's hazard lights were functioning on the day of the accident, and a police officer testified that they were visible from behind the trash vehicle. Any repair or alteration in the lighting of City trash trucks was irrelevant in the present case. The negligence of the owner or driver of the trash vehicle is not in issue. The appellant was convicted of homicide by vehicle, in violation of § 32-5A-191, Code of Alabama (1975), which states:
 "Whoever shall unlawfully and unintentionally cause the death of another person while engaged in the violation of *Page 540 
any State law or municipal ordinance applying to the operation or use of a vehicle or to the regulation of traffic shall be guilty of homicide when such violation is the proximate cause of said death."
Thus, the State must have shown the appellant unintentionally caused the death of someone else while violating a traffic or vehicular law or ordinance. In the present case, the State introduced evidence that the appellant was speeding and operating his vehicle in a reckless manner. There was also evidence that the appellant was driving under the influence. Both of the passengers in the appellant's car were killed as a result of the appellant's crashing into the back of the trash vehicle. The accident took place at approximately 1:00 p.m. Because any changes made to the lighting on City trash vehicles was irrelevant in the instant case, the trial court properly disallowed the evidence.
 V
The appellant argues that the trial court erred in allowing a police officer's testimony that, in his opinion, substance found in the appellant's car was marijuana, because no chemical tests were performed. However, the record contains ample evidence of the testifying police officer's experience and training in the area of drug enforcement and drug detection and identification. The officer testified that he smelled marijuana in the car, saw two cigarettes in the floorboard and one "roach" in the ash tray, and saw some "green leafy substance" in a plastic "baggie" in a purse in the front seat of the car. He testified that, based on his experience and training, he believed that there was marijuana in the appellant's vehicle. We find that the officer was experienced in the field of narcotics and was qualified to give his opinion concerning the presence of marijuana. Fleming v. State, 470 So.2d 1343, 1347
(Ala.Cr.App. 1985); Jenkins v. State, 46 Ala. App. 719,248 So.2d 758 (1971).
The appellant cites Johnson v. State, 501 So.2d 568
(Ala.Cr.App. 1986), to argue that a police officer's testimony that a substance looks like marijuana is insufficient to prove that the substance was marijuana. However, in Johnson, the laboratory report on the marijuana was improperly allowed into evidence because "[t]here was a complete break in the chain of custody." Id. at 573. This court further stated in Johnson that the prosecutor had made a "final effort" to introduce the evidence by attempting to establish an officer as an expert in recognizing marijuana. However, this effort proved futile because the officer testified that he never saw the substance before it got to the crime lab. Id. at 574. Therefore, because the substance taken from the scene was not sufficiently established as the marijuana which was examined at the crime lab, the State's case failed. However, in the present case, the testifying officer was present at the scene of the accident and made his observations concerning the marijuana at that time. Therefore, this conviction is due to be affirmed.
AFFIRMED.
All Judges concur except PATTERSON, J., who dissents without opinion.
[1] "The general rule is that evidence of repairs or alterations made, or precautions taken, by the defendant after the injury to the plaintiff in an accident is not admissible as tending to show the defendant's antecedent negligence." C. Gamble,McElroy's Alabama Evidence, § 189.02(1) (3d ed. 1977).