101 N.J. Super. 598 (1968)
245 A.2d 72
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
MOSES PIPKIN, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued June 24, 1968.
Decided July 10, 1968.
*599 Before Judges SULLIVAN, FOLEY and LEONARD.
Miss Cynthia M. Jacob, Assistant Deputy Public Defender, argued the cause for appellant (Mr. Peter Murray, Public Defender, attorney).
Mr. Archibald Kreiger, Assistant Prosecutor, argued the cause for respondent (Mr. John G. Thevos, Passaic County Prosecutor, attorney).
The opinion of the court was delivered by FOLEY, J.A.D.
After a non-jury trial defendant was found guilty on the fifth and sixth counts of a six-count indictment. The counts in question charged, respectively, that (1) on or about June 16, 1967, defendant unlawfully possessed, and (2) sold a narcotic drug, to wit, heroin, contrary to the provisions of N.J.S.A. 24:18-4. Judgments of dismissal were entered by the court, sua sponte, on the first, second, third and fourth counts.
On this appeal the principal issues, as stated by defendant, are:
"I. Can a narcotics offense be proved without expert testimony that there was in fact a narcotic drug involved, and with circumstantial evidence alone, when the existence of a specific drug was part of the substantive crime charged?
*600 II. If a narcotics offense can be proved by circumstantial evidence alone, must there be expert testimony concerning narcotics and their effect?"
Defendant was an inmate or patient in St. Dismas Treatment Center, Paterson, New Jersey, an institution devoted to the rehabilitation of narcotics addicts. He entered the Center, voluntarily, in January of 1967 and left June 11, 1967.
Monsignor William N. Wall, Director of the Center, testified that from about June 10 until June 16 he observed the abnormal behavior of several of the inmates and suspected they that were using narcotics. He had them tested medically for the presence of narcotics in their blood streams. As the result of these tests he reported his suspicions of narcotics use to the police department of the City of Paterson. The Director also identified defendant at the trial and stated that he had seen him in the Center on June 11 and June 16.
Among the inmates who aroused the Director's suspicions were John Franciscone, Robert Turkowski, Alfred Portella, Jr. and John Brown, all narcotics addicts. These men gave statements to the police implicating defendant in the sale of narcotics to them during the month of June 1967 and were subsequently presented by the State as witnesses at trial.
Franciscone testified that he purchased a white substance in glassine envelopes from defendant at the solicitation of the latter on June 9, 11 and 16, at a cost of $5 per packet. He bought the packets believing that they contained heroin.
Turkowski testified that he had purchased from defendant a similar glassine envelope containing a white substance on June 16, 1967.
Portella said that on June 16 he had purchased from defendant such an envelope containing a white substance for which he paid $5.
Brown testified generally in the same vein.
The police authorities, of course, did not at any time have possession of any of the packets and so the State was unable to prove by chemical analysis that the white powder in the packets contained heroin. Instead, the State adduced *601 testimony from the addict purchasers which was in the nature of expert testimony.
Franciscone had been an addict for five years and had injected himself with heroin on more than 1,000 prior occasions. Turkowski had been an addict for three and one-half years and had taken over 2,000 injections of heroin during that time. Portella, an addict for one and one-half years, had had over 800 prior injections of the drug. Brown, an addict for four years, had been the recipient of more than 2,000 prior injections. All of these witnesses (with the exception of Portella), with greater or lesser particularity, stated, in effect, that their physiological and psychological reactions were the same after injecting themselves with the substance provided by defendant as they had been after previous injections of heroin.
Defendant denied any complicity in the sale of narcotics on any date in June 1967.
After dismissing counts one to four inclusive, charging violations of the narcotics law on June 9 and June 11, and discounting certain gaschromatograph tests (blood tests) the trial court held that the State had adduced sufficient credible evidence to circumstantially support beyond a reasonable doubt a finding that defendant had possessed (count five) and sold (count six) narcotics on June 16, 1967 in violation of N.J.S.A. 24:18-4.
While we have in this State no case which expressly holds that a charge of violation of the narcotics law may not be proved circumstantially but requires direct evidence, as defendant urges, we find no basis in reason or logic why this crime should require a different type of proof than any other, and it is beyond debate that our courts have long held that in proper circumstances circumstantial evidence alone affords sufficient basis to sustain a criminal conviction.
Defendant argues also that the State's case was bereft of expert opinion evidence that the purchased packets did in fact contain a narcotic drug, and for that reason even a case based upon circumstantial proofs was not made out. *602 This contention overlooks the direct testimony of the four purchasers, all of whom had lengthy histories in heroin use and who, because of their unfortunate addiction, had come to know well the abnormal reactions which follow injection of heroin.
The factfinder chose to accept their testimony as credible and reliable and so he was at liberty to conclude on the aggregate of the facts that beyond a reasonable doubt the substance the addicts obtained from defendant in fact contained a narcotic drug.
Other jurisdictions in essence support these views. With regard to the circumstantial evidence problem see People v. Schumacher, 64 Cal. Rptr. 494, 498 (Ct. of App. 1967); People v. Von Latta, 65 Cal. Rptr. 651, 654 (Ct. of App. 1968); People v. Showers, 65 Cal. Rptr. 55, 57 (Ct. of App. 1967); and the case of People v. Sykes, 44 Cal.2d 166, 280 P.2d 769, 770-773 (Sup. Ct. 1955). As to the sufficiency of the testimony of an addict to support a conviction see the Pennsylvania cases of Commonwealth v. Aikens, 179 Pa. Super. 501, 118 A.2d 205 (Super. Ct. 1955); Commonwealth v. Harris, 186 Pa. Super. 59, 140 A.2d 344, 345 (Super. Ct. 1958).
Defendant relies upon State v. Campisi, 23 N.J. 513 (1957). We find that case factually and legally inapposite. Campisi did not hold that a narcotics violation may not be proved circumstantially. Nor did it hold that narcotics addicts properly qualified by reason of past experience may not offer an opinion that a given substance with which they had injected themselves or were injected, contained a narcotic drug. We find it significant that Campisi ruled that the trial court properly admitted the testimony of law enforcement agents qualified for the most part by observational experience alone, as expert testimony.
Undergirding our rejection of defendant's arguments is the strong legislative and judicial policy of this State with respect to violations of narcotics laws. This court unequivocally exposed the legislative intention underlying the New *603 Jersey enactment in 1933 of the Uniform Narcotics Drug Law in State v. Weissman, 73 N.J. Super. 274, 282 (App. Div. 1962), where it said:
"It is clear that the legislative design in New Jersey is to eradicate the illegal traffic in narcotic drugs. State v. Reed, 34 N.J. 554, 564 (1961). That was the primary purpose for the adoption of our Narcotic Drug Law in 1933. Ibid. When our Supreme Court, in discussing R.S. 24:18-4 in Reed, said:
`The statute was passed as an all-out offensive to combat the drug evil by eliminating sources of supply. Every step in the scheme of illegal distribution was made a violation of section 4,
it emphatically evinced a judicial policy of interpretation and enforcement consistent with the Illinois decisions, supra. Cf. 279 Club, Inc. v. Municipal Board of A.B.C. of Newark, 73 N.J. Super. 15 (App. Div. 1962)."
Finally, the public defender at the request of defendant raises three additional grounds of alleged error. We have examined these carefully and find them to be so lacking in merit as to require no discussion.
The judgment is affirmed.