UNITED STATES of America, Plaintiff-Appellee,

v.

Robert CRISP, Edward Perrone and Gungor Yatman, Defendants-Appellants.

UNITED STATES of America, Plaintiff-Appellee,

v.

Edward PERRONE, Defendant-Appellant.

Nos. 76-2656 and 76-4259.

United States Court of Appeals, Fifth Circuit.

Dec. 1, 1977.

See also, D.C., 413 F.Supp. 861.

Theodore J. Sakowitz, Federal Public Defender, Robyn J. Hermann, Asst. Federal Public Defender, Miami, Fla., for Crisp.

Melvyn Kessler, Miami, Fla., for Perrone.

Robert S. McCain, Fort Lauderdale, Fla. (Court-appointed), for Yatman.

Jack v. Eskenazi, U. S. Atty., Jay R. Moskowitz, Sp. Atty., U. S. Dept. of Justice, Miami, Fla., John H. Burnes, Jr., William G. Otis, Attys., Dept. of Justice, Washington, D. C., for U. S. in 76–2656 and 76–4259.

Before BROWN, Chief Judge, RONEY and FAY, Circuit Judges.

RONEY, Circuit Judge:

A jury convicted the defendants of conspiracy and multiple counts of possession of cocaine with intent to distribute, 18 U.S. C.A. § 2, 21 U.S.C.A. §§ 841(a)(1), 846.   On

appeal, they challenge the sufficiency and propriety of the Government's evidence that the white substance they cut, snorted and sold was cocaine. Defendant Edward Perrone, the alleged organizer of a plan to distribute cocaine delivered to him at his massage parlors, claims prejudice from the failure to sever a separate continuing criminal enterprise count against him, 21 U.S.C.A. § 848, on which he was acquitted. Perrone also challenges the Government's failure to provide him with allegedly exculpatory statements by Donald Gould, a deceased co-conspirator. Finding no reversible error, we affirm.

■ The Government sought to prove the identity of the cocaine in two ways. First, it called two former Perrone employees who testified to numerous occasions, including those which formed the basis for the substantive counts, when the defendants referred to the white powder they were handling as "coke" or "cocaine," and snorted it. One witness snorted some himself. The defendants cut the substance, weighed it, tested it over a flame and under a microscope, and sold it for substantial sums of money. The defendants argue that this proof was circumstantial and cannot substitute for chemical analysis evidence. They conclude that the evidence was insufficient to convict them on the substantive counts. The nature of a narcotic drug, however, may be established by circumstantial evidence, so long as the drug's identity is established beyond a reasonable doubt. *United States v. Quesada,* 512 F.2d 1043, 1045 (5th Cir.), *cert. denied,* 423 U.S. 946, 96 S.Ct. 356, 46 L.Ed.2d 277 (1975). The court here properly charged the jury, and the jury could have found beyond a reasonable doubt that the testimony of the two witnesses proved the substance was cocaine.

■ The second way the Government sought to prove the identity of the cocaine was by introducing at trial cocaine seized from one of Crisp's dealers, who was not a defendant. Building on their challenge to the circumstantial nature of their conversa-tions about "coke," defendants argue that evidence was so sparse, and the connection between the cocaine in evidence and the conspiracy was so tenuous, that allowing the evidence had a prejudicial impact which far exceeded its probative value. The conversations, however, were admissible and relevant. Viewing the introduction of the cocaine alone, ample testimony connected it to the conspiracy. An undercover agent testified that after the Government seized the cocaine, defendant Yatman said that "the coke and other items belonged to [Yatman]" and that co-defendant Robert Crisp was worried about the arrest of the dealer and would be leaving for Detroit "until things cooled off." Another former cocaine dealer for Crisp testified that Yatman and Crisp were "really upset about the fact that [their dealer] had gotten busted with their merchandise." The trial judge did not err in allowing the cocaine to be introduced into evidence.

■ On appeal, Perrone alleges prejudice from the trial court's failure to sever the criminal enterprise count from the conspiracy and other substantive counts. Perrone did not seek severance prior to trial as required by Fed.R.Crim.P. 12(b)(5). The trial court did not abuse its discretion in denying the motion when it was made after the jury began its deliberations. The criminal enterprise statute is aimed at the organizers of criminal conspiracies having five or more members. Since trial, the Supreme Court has held that § 846 conspiracy is a lesser included offense of § 848 management of a criminal enterprise. *Jeffers v. United States,* 432 U.S. 137, 97 S.Ct. 2207, 53 L.Ed.2d 168 (1977). On the facts of that case, the Court noted a joint trial on both § 846 and § 848 charges "could have taken place without undue prejudice to petitioner's Sixth Amendment right to a fair trial." *Id.* at 153, 97 S.Ct. at 2217. Similarly, Perrone suffered no prejudice here from the failure to sever because the evidence introduced to show criminal enterprise was also pertinent to either the con-

spiracy count or the other substantive counts of the indictment.

Perrone moved for a new trial because the Government failed to disclose certain allegedly exculpatory statements by Donald Gould. Prior to trial, Perrone made a general request under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), for exculpatory evidence in the hands of the Government. At trial, three witnesses testified that Gould delivered large quantities of cocaine to Perrone at his massage parlors during September and October of 1973. Perrone took the stand and said he never received cocaine from Gould. Gould was murdered before trial.

Perrone's motion for a new trial rested on two statements made by Gould prior to his untimely demise. The first was his testimony in the 1974 trial of Tommy Minichiello. *See United States v. Minichiello,* 510 F.2d 576 (5th Cir. 1975). The second was his remarks to DEA agents in October 1973 shortly after he was arrested. The trial court held two evidentiary hearings. Applying the standard announced in *United States v. Agurs,* 427 U.S. 97, 112, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), the court held that use of the statements at trial would not have created a reasonable doubt of Perrone's guilt which did not otherwise exist. *See Garrison v. Maggio,* 540 F.2d 1271 (5th Cir. 1976). The court denied the motion for a new trial.

■ After review of the record, we find the trial court's decision to be correct. In *Minichiello,* Gould admitted dealing in drugs, and named Minichiello as one of his suppliers. In the course of his testimony, Gould described Perrone as a friend, and a partner in the massage parlor business. Gould said a prostitute who worked for Perrone took him to Minichiello's apartment to arrange a cocaine buy, and Perrone accompanied them. Gould said he did not sell cocaine to anyone other than the Government between August 16 and October 3, 1973. He said he was not "completely sure" whether he had supplied cocaine to Perrone's prostitutes in December 1973. These statements are only tangentially related to the issues in the trial below. Gould's assertion that he did not sell cocaine in September does not establish that he did not deliver it to Perrone then. His equivocal denial of supplying cocaine to Perrone's prostitutes in December said nothing about whether he supplied drugs to Perrone himself during an earlier time period.

After he was arrested, Gould, in the presence of his attorney, told DEA agents that he had had no narcotics dealings with Perrone, and that their relationship was strictly concerned with their massage parlor operation. At a meeting a few days later, however, when his attorney was not present, Gould told the same agents that Perrone was in fact dealing in drugs, but he was afraid to say so in the presence of his attorney, a friend of Perrone's. Gould told the agents he was afraid of Perrone, and for that reason would refuse to testify against Perrone. The trial court correctly reasoned that, although Gould's initial statement was exculpatory, if defense counsel had attempted to introduce it, the subsequent statements could have been revealed on cross-examination. *See D'Aquino v. United States,* 192 F.2d 338, 371 (9th Cir. 1951), *cert. denied,* 343 U.S. 935, 72 S.Ct. 772, 96 L.Ed. 1343 (1952). On the whole, the statements tend to be more incriminating than exculpatory, and, in view of the eyewitness' testimony to Perrone's drug dealings, their nondisclosure does not warrant reversal under *Agurs.*

AFFIRMED.