STATE OF NEBRASKA, APPELLEE, V. RICHARD WATSON, APPELLANT.

437 N.W.2d 142

Filed March 17, 1989.    No. 88-421.

Kirk E. Naylor, Jr., for appellant.

Robert M. Spire, Attorney General, and Charles A. Kandt, Lincoln County Attorney, for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

PER CURIAM.

The defendant-appellant in this action, Richard Watson, was charged with three drug-related offenses. The first count alleged that on March 14, 1985, appellant distributed methamphetamine; the second count alleged that on June 6, Watson possessed cocaine; and the final count charged that on October 6, he distributed cocaine. A jury convened in the district court for Lincoln County convicted the appellant on count III, distribution of cocaine, and acquitted him of all other charges. Watson was sentenced to a term of 2 to 5 years' imprisonment.

Watson appeals to this court, contending that the district court erred in two respects: (1) The evidence was insufficient as a matter of law to support the charge that the appellant delivered cocaine to Diane Lackey on October 6, 1985, and (2) allowing the prosecution to present, as rebuttal evidence, a portion of an unedited videotape made on October 6, 1985, containing sexual activity between the appellant and the primary witness against him, Lackey, unduly prejudiced the jury against him.

In this drug prosecution, no controlled substances were introduced into evidence against the appellant. Instead, to establish the elements of the crimes charged, the prosecution was based primarily upon the testimony of the appellant's estranged girlfriend, Lackey, and upon two versions of a videotape, one edited and one unedited, made by appellant and Lackey on October 6. There is some conflict in the evidence adduced at trial regarding the events in question; however, a jury verdict must be sustained if, taking the view most favorable to the State, there is sufficient evidence to support it.

*State v. Schenck*, 222 Neb. 523, 384 N.W.2d 642 (1986). Therefore, we must assume that the testimony of the State's primary witness, Lackey, is credible.

Lackey had been living at Watson's home since March of 1985. She quit her job prior to moving in with him, and her primary source of support was through the appellant, Watson. Soon after she moved in, on March 14, she and the appellant met a friend of Watson's, Bruce Lingenfelter, for dinner. After dinner the three of them drove around in Watson's car and went to a few bars in town. On the way to these bars, Lackey testified that she ingested a controlled substance with Lingenfelter and Watson. Lackey testified that Watson identified the substance as "crank" and "crystal" and that it was Lingenfelter who brought the substance with him. She further stated that Watson helped her consume the substance, as this was her first time using that controlled substance. Lackey described how she ingested the substance, the physical appearance of the drug, and how the substance affected her. Later, the three of them went to Watson's residence and continued to use this substance. The day after she engaged in this activity, she was very ill.

According to her testimony, the next experience Lackey had with drugs was also with the appellant. Lackey stated that on June 6, she and the appellant did "several grams of nose candy." An expert for the State testified earlier that "nose candy" was a slang term for cocaine. On the evening of the 6th, Lackey and Watson began using "nose candy," drinking wine, and making a video of their sexual activity. According to Lackey, she and the appellant often would make videos of their sexual activity, but these would generally be destroyed soon after. Lackey went on to describe the physical appearance and effect of this drug, as distinguished from the substance she ingested with the appellant and Lingenfelter on March 14.

Finally, Lackey testified regarding the events of October 6, the date the incidents occurred that led to Watson's conviction for distribution of cocaine. Lackey testified that she could remember the date very specifically because Watson was supposed to return earlier that weekend from Colorado, but failed to do so. Before Watson returned, Lackey received a phone call that made her very upset and confirmed in her mind

the suspicions she had that Watson was in Colorado with another woman. However, when the appellant returned from Colorado on October 6, Lackey said nothing to him about her suspicions. Instead, Lackey testified that when Watson returned, he wanted to get some "nose candy" and make a video of their sexual activity. The two of them went to a video store, rented the equipment necessary to make the film, and stopped at a person's house to pick up the drug. The two then returned home and began to snort the substance while making a video of their sexual acts. Lackey described ingesting the drug on that date. Lackey then hid the tape from Watson in a drawer in the bedroom.

From this point, their relationship began to deteriorate rapidly. On the evening of October 9, Watson stayed out all night and telephoned Lackey on the morning of the 10th. At that time, Lackey expressed her desire to move out of Watson's house, and he said he would come home to discuss the particulars of her departure. However, before Watson called her on the 10th, Lackey had contacted Jack Bachelor, a police officer in Valentine, Nebraska. She told Bachelor that she needed "help" because of her use of drugs and did not know where to go. Officer Bachelor put her in contact with Officer David Elliott. Lackey met Officer Elliott on October 10 and discussed her need to get help for her drug problem. At that time Lackey told Officer Elliott about the videotapes she had made with the appellant. Officer Elliott asked her if she had any of the tapes, and she agreed to turn the tape made on October 6 over to him. Lackey gave the videotape to Officer Elliott on October 11. This film is the video that was admitted into evidence. Because the tape contained explicit sexual activity, an edited version was made with all nudity and sexual activity blocked out.

To assist the jury in viewing the tape, Lackey explained the action that correlated to what the jurors were viewing and hearing. She identified the substance that was being ingested on camera as "nose candy."

The testimony of Watson conflicted with Lackey's in several respects. According to the appellant, Lackey moved into his home in North Platte during March of 1985. However, Watson

vehemently denied consuming any drugs with Lackey on March 14. Regarding the events of October 6, Watson testified that when he returned from his trip to Colorado, Lackey stated that she had a "surprise" for him. The appellant contended that Lackey called this surprise "crystal" and that it was Lackey who supplied this substance, not the appellant. During the State's case in chief, an expert for the State testified that "crystal" is a common slang term for methamphetamine. Watson admitted participating in the making of the videotape and in the consuming of what he testified Lackey called "crystal," but contended that it was originally Lackey's idea to make the tape. Lackey moved out of the appellant's home on October 12, 1985.

In rebuttal, the State sought to introduce into evidence an unedited portion of the videotape made on October 6. The basis for introduction of the unedited tape was to rebut testimony by Watson that Lackey, not Watson, initiated the activities on October 6 and that she provided the controlled substance on that date. The defense objected to the introduction of any portion of the unedited tape on the basis of Neb. Rev. Stat. § 27-403 (Reissue 1985), contending that the probative value of the tape was substantially outweighed by the danger of unfair prejudice. The trial court found the unedited tape to be proper rebuttal and admitted approximately the first 10 minutes of the video, stating that "everything after that is sexual in nature."

Regarding the first assignment of error, the lack of physical evidence of the chemical content of any of the drugs allegedly ingested by the appellant and Lackey required the prosecution to rely on purely circumstantial evidence to establish the identity of the drugs at issue in this case. Although this court has never explicitly discussed the issue of the use of circumstantial evidence in a drug prosecution to identify the chemical content of drugs alleged to be prohibited controlled substances, the courts that have addressed this issue have held such evidence may be sufficient to prove the identity of illegal drugs beyond a reasonable doubt. For example, in *United States v. Harrell*, 737 F.2d 971 (11th Cir. 1984), *cert. denied* 470 U.S. 1027, 105 S. Ct. 1392, 84 L. Ed. 2d 781 (1985), the U.S. Court of Appeals for the 11th Circuit held that identification of

512

a controlled substance does not require direct evidence if the available circumstantial evidence establishes the identification beyond a reasonable doubt. Both federal and state courts are in agreement with this proposition. See, e.g., *U.S. v. Meeks*, 857 F.2d 1201 (8th Cir. 1988); *United States v. Osgood*, 794 F.2d 1087 (5th Cir. 1986), *cert. denied* 479 U.S. 994, 107 S. Ct. 596, 93 L. Ed. 2d 596; *United States v. Murray*, 753 F.2d 612 (7th Cir. 1985); *United States v. Roman*, 728 F.2d 846 (7th Cir. 1984), *cert. denied* 466 U.S. 977, 104 S. Ct. 2360, 80 L. Ed. 2d 832; *United States v. Scott*, 725 F.2d 43 (4th Cir. 1984); *United States v. Sweeney*, 688 F.2d 1131 (7th Cir. 1982); *United States v. Crisp*, 563 F.2d 1242 (5th Cir. 1977); *United States v. Gregorio*, 497 F.2d 1253 (4th Cir. 1974), *cert. denied* 419 U.S. 1024, 95 S. Ct. 501, 42 L. Ed. 2d 298; *United States v. Atkins*, 473 F.2d 308 (8th Cir. 1973), *cert. denied* 412 U.S. 931, 93 S. Ct. 2751, 37 L. Ed. 2d 160; *Jenkins v. State*, 46 Ala. App. 719, 248 So. 2d 758 (1971); *Johnson v. State*, 501 So. 2d 568 (Ala. Crim. App. 1986); *Winters v. State*, 646 P.2d 867 (Alaska App. 1982); *State v. Cunningham*, 17 Ariz. App. 314, 497 P.2d 821 (1972); *People v. Sonleitner*, 183 Cal. App. 3d 364, 228 Cal. Rptr. 96 (1986); *People v. Garcia*, 166 Cal. App. 3d 1056, 212 Cal. Rptr. 822 (1985); *People v. McLean*, 56 Cal. 2d 660, 365 P.2d 403, 16 Cal. Rptr. 347 (1961), *cert. denied* 370 U.S. 958, 82 S. Ct. 1613, 8 L. Ed. 2d 824 (1962); *People v. Sanchez*, 197 Cal. App. 2d 617, 17 Cal. Rptr. 230 (1961); *People v. Partin*, 254 Cal. App. 2d 89, 62 Cal. Rptr. 59 (1967); *People v. Rios*, 127 Cal. App. 2d 620, 274 P.2d 163 (1954); *In re Waylon M.*, 129 Cal. App. 3d 950, 181 Cal. Rptr. 413 (1982); *People v. Tipton*, 124 Cal. App. 2d 213, 268 P.2d 196 (1954); *People v. Steiner*, 640 P.2d 250 (Colo. App. 1981); *People v. Edwards*, 198 Colo. 52, 598 P.2d 126 (1979); *A.A. v. State*, 461 So. 2d 165 (Fla. App. 1984); *State v. Schofill*, 63 Haw. 77, 621 P.2d 364 (1980); *The People v. Robinson*, 14 Ill. 2d 325, 153 N.E.2d 65 (1958); *Copeland v. State*, 430 N.E.2d 393 (Ind. App. 1982); *Warthan v. State*, 440 N.E.2d 657 (Ind. 1982); *Locklayer v. State*, 162 Ind. App. 64, 317 N.E.2d 868 (1974); *Pettit v. State*, 258 Ind. 409, 281 N.E.2d 807 (1972); *Edwards v. Commonwealth*, 489 S.W.2d 23 (Ky. 1973); *People v Boyd*, 65 Mich. App. 11, 236 N.W.2d 744 (1975); *State v. Kerfoot*, 675 S.W.2d 658 (Mo. App. 1984); *State v. Neal*, 624

S.W.2d 182 (Mo. App. 1981); *State v. Starr*, 204 Mont. 210, 664 P.2d 893 (1983); *State v. Dunn*, 155 Mont. 319, 472 P.2d 288 (1970); *State v. Pipkin*, 101 N.J. Super. 598, 245 A.2d 72 (1968), *cert. denied* 393 U.S. 1042, 89 S. Ct. 668, 21 L. Ed. 2d 590 (1969); *People v Jewsbury*, 115 A.D.2d 341, 496 N.Y.S.2d 164 (1985); *People v. Kenny*, 30 N.Y.2d 154, 282 N.E.2d 295, 331 N.Y.S.2d 392 (1972); *Cory v. State*, 543 P.2d 565 (Okla. Crim. App. 1975); *Commonwealth v. Leskovic et al.*, 227 Pa. Super. 565, 307 A.2d 357 (1973); *Commonwealth v. Aikens*, 179 Pa. Super. 501, 118 A.2d 205 (1955); *Miller v. State*, 168 Tex. Crim. 570, 330 S.W.2d 466 (1959); *State v. Hutton*, 7 Wash. App. 726, 502 P.2d 1037 (1972); *State v. Frazier*, 162 W. Va. 602, 252 S.E.2d 39 (1979); *State v. Haller*, 363 S.E.2d 719 (W. Va. 1987).

That lay opinion can be used to identify the substances in question in a drug prosecution seems clearly authorized by our statutes. Neb. Rev. Stat. § 27-701 (Reissue 1985) states:

If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue.

We are therefore in agreement with the vast majority of courts in this nation that hold proof of the identity of a substance by circumstantial evidence, including lay testimony by a person sufficiently familiar with the drug in question, may be sufficient in a drug prosecution. Of course, this circumstantial evidence must prove the identity of the substance beyond a reasonable doubt. See *In re Winship*, 397 U.S. 358, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970). In this challenge to the sufficiency of the evidence, whether the State has met its burden of establishing the identity of the substance beyond a reasonable doubt remains at issue.

In ascertaining whether the State has met its burden of proof beyond a reasonable doubt, the decisions of the federal courts and various states regarding the issue of the quantum of proof necessary to sustain a drug conviction when the drug is not entered into evidence or subjected to chemical testing must be

closely evaluated. An examination of these cases evidences the existence of a number of common factors utilized by the courts to assist in determining whether the evidence is sufficient to sustain a conviction.

The U.S. courts of appeals have decided a number of drug cases in which no drug was available for chemical analysis. The factors most commonly utilized by these courts include: (1) the privacy or secretiveness of the transaction (*U.S. v. Meeks*, 857 F.2d 1201 (8th Cir. 1988); *United States v. Murray*, 753 F.2d 612 (7th Cir. 1985); *United States v. Roman*, 728 F.2d 846 (7th Cir. 1984); *United States v. Scott*, 725 F.2d 43 (4th Cir. 1984); *United States v. Gregorio*, 497 F.2d 1253 (4th Cir. 1974)); (2) references made to the drug by the defendant and others, either by the drug's name or a slang term commonly used to connote the drug (*United States v. Harrell*, 737 F.2d 971 (11th Cir. 1984); *United States v. Crisp*, 563 F.2d 1242 (5th Cir. 1977); *Meeks, supra*; *Scott, supra*; *Gregorio, supra*); (3) testimony by witnesses who have a significant amount of experience with the drug in question, so that their identification of the drug as the same as the drug in their past experience is highly credible (*United States v. Osgood*, 794 F.2d 1087 (5th Cir. 1986); *United States v. Sweeney*, 688 F.2d 1131 (7th Cir. 1982); *United States v. Atkins*, 473 F.2d 308 (8th Cir. 1973); *Meeks, supra*; *Roman, supra*; *Harrell, supra*; *Scott, supra*); (4) high price paid for the substance (*Murray, supra*; *Roman, supra*; *Harrell, supra*; *Scott, supra*; *Crisp, supra*; *Gregorio, supra*; *Atkins, supra*); (5) behavior characteristic of sale and use of a particular substance, such as testing, weighing, cutting, and peculiar ingestion (*Harrell, supra*; *Crisp, supra*); and (6) prior involvement by the defendant in drug trafficking (*Osgood, supra*). In each of the above cases, a number of the elements listed above were present. Regarding factor (3), the prior use of the substance by the witness, the courts all stressed the necessity of significant past experience with the drug in question before a positive identification could be made.

An examination of the decisions in other states evidences an evaluation of factors similar to those utilized by the federal courts to determine whether the government has met its burden of establishing the identity of the substance beyond a

reasonable doubt. A number of cases held the evidence to be sufficient. In these cases, the courts considered: (1) The experience of the person testifying (*Johnson v. State*, 501 So. 2d 568 (Ala. Crim. App. 1986) (identification by an officer with years of experience of marijuana by unique appearance and smell); *People v. Partin*, 254 Cal. App. 2d 89, 62 Cal. Rptr. 59 (1967) (witness smoked marijuana on prior occasions, the defendant had sold him the substance previously in the same type container, substance from similar container sold by the defendant was recovered and tested positive); *People v. Rios*, 127 Cal. App. 2d 620, 274 P.2d 163 (1954) (heroin addict testified as to drug and effect compared to same drug, and as to past use of it with the same people who were defendants in this action); *People v. Garcia*, 166 Cal. App. 3d 1056, 212 Cal. Rptr. 822 (1985) (past use by witness significant, and reactions same before as with use of drug now); *A.A. v. State*, 461 So. 2d 165 (Fla. App. 1984) (arresting officer, who testified and identified marijuana by unique smell, had 4 years' experience in narcotics unit and viewed and smelled "tons" of marijuana in preceding 4 years); *The People v. Robinson*, 14 Ill. 2d 325, 153 N.E.2d 65 (1958) (testimony of heroin addicts); *Pettit v. State*, 258 Ind. 409, 281 N.E.2d 807 (1972); *Edwards v. Commonwealth*, 489 S.W.2d 23 (Ky. 1973) (witness heroin addict for 20 years); *People v Boyd*, 65 Mich. App. 11, 236 N.W.2d 744 (1975) (witness heroin addict); *State v. Kerfoot*, 675 S.W.2d 658 (Mo. App. 1984) (identification of marijuana by officer); *State v. Neal*, 624 S.W.2d 182 (Mo. App. 1981) (identification sufficient where witness testified that he used marijuana daily, that he bought and sold marijuana, and that he smoked some of the substance the defendant sold him); *State v. Pipkin*, 101 N.J. Super. 598, 245 A.2d 72 (1968) (four witnesses testified, all with long histories of heroin addiction); *People v Jewsbury*, 115 A.D.2d 341, 496 N.Y.S.2d 164 (1985) (prior experiences with the drug; witness processed and sold some of the substance sold him by the defendant and received no complaints); *Cory v. State*, 543 P.2d 565 (Okla. Crim. App. 1975) (witness police officer with many years of experience with marijuana); *Commonwealth v. Aikens*, 179 Pa. Super. 501, 118 A.2d 205 (1955) (witness heroin addict); *Miller v. State*, 168 Tex. Crim.

570, 330 S.W.2d 466 (1959) (narcotics officer's identification testimony sufficient); *State v. Haller*, 363 S.E.2d 719 (W. Va. 1987) (both witnesses previously used cocaine extensively)); (2) corroborating testimony by officers or other experts as to the identification of the substance or the expected effects after use of the drug in question (*Johnson v. State, supra; State v. Cunningham*, 17 Ariz. App. 314, 497 P.2d 821 (1972); *People v. Sanchez*, 197 Cal. App. 2d 617, 17 Cal. Rptr. 230 (1961); *People v. Steiner*, 640 P.2d 250 (Colo. App. 1981); *State v. Schofill*, 63 Haw. 77, 621 P.2d 364 (1980); *People v. Edwards*, 198 Colo. 52, 598 P.2d 126 (1979)); (3) references and representations made by the defendent as to the identity of the drug, either by name or common slang term (*Winters v. State*, 646 P.2d 867 (Alaska App. 1982); *People v. Partin, supra; People v. Rios, supra; People v. Steiner, supra; People v. Edwards, supra; State v. Schofill, supra; Edwards v. Commonwealth, supra*); (4) behavior characteristic of use or possession of the particular controlled substance (*State v. Cunningham, supra; People v. Sonleitner*, 183 Cal. App. 3d 364, 228 Cal. Rptr. 96 (1986); *People v. Rios, supra; The People v. Robinson, supra; Pettit v. State, supra; Edwards v. Commonwealth, supra*); (5) secretiveness of transaction (*People v. Steiner, supra; People v. Edwards, supra*); and (6) sensory identification of the substance if the substance is sufficiently unique (*A.A. v. State, supra* (unique smell of marijuana); *Cory v. State, supra* (unique visual appearance of marijuana); *Commonwealth v. Leskovic et al.*, 227 Pa. Super. 565, 307 A.2d 357 (1973) (capsules called "Christmas trees" were identifiable by color and letters unique to that of barbiturate)).

On the other hand, a number of states have held the evidence insufficient to establish the identity of the substance as an illegal drug. In the vast majority of these cases, the prosecution was primarily based upon the testimony of a witness who was shown to have insufficient experience with the drug in question to positively identify the drug as the substance the defendant was charged with having in his possession. A New York court, in *People v. Kenny*, 30 N.Y.2d 154, 282 N.E.2d 295, 331 N.Y.S.2d 392 (1972), held the evidence insufficient when it was based on

witness testimony in identifying marijuana. In *Kenny*, the witness testified that he had smoked marijuana with the defendant and described the physical appearance of the marijuana. He also stated that he became "high" after smoking the substance, as he became " 'like dizzy, and it was sort of like being drunk, yet I was conscious of my senses.' " 30 N.Y.2d at 156, 282 N.E.2d at 296, 331 N.Y.S.2d at 394. The court stressed that the witness was testifying about an experience 17 months prior to trial and the facts that the witness had one similar experience with marijuana 6 months prior to the event he testified about and one sometime after. The court stated: "These isolated experiences, one of which is before the time charged in the indictment, do not afford a reliable basis to establish the technical identity of the drug which is the essence of the crime charged." 30 N.Y.2d at 157, 282 N.E.2d at 296, 331 N.Y.S.2d at 394. In *Jenkins v. State*, 46 Ala. App. 719, 248 So. 2d 758 (1971), the Alabama court held the evidence insufficient because the witness that testified for the prosecution was not shown to be sufficiently familiar with the subject upon which he was asked to give an opinion. The court stated that it must be proven that the witness is qualified either by study, practice, experience, or observation of a given subject. In California, in *People v. McLean*, 56 Cal. 2d 660, 365 P.2d 403, 16 Cal. Rptr. 347 (1961), the court overturned a defendant's conviction, finding the evidence insufficient. In *McLean*, the witness testified that she smoked marijuana cigarettes furnished by the accused on seven occasions, the first two times being the basis of the charge; described the effect as "happy"; and testified that she recognized the substance from pictures she had seen and effects described to her by a number of people. Similarly, in *State v. Hutton*, 7 Wash. App. 726, 502 P.2d 1037 (1972), the witness testified that she ingested a "white, flaky substance" she had heard to be speed and explained the physical effect of the drug in general detail. At a later date, she asked the defendant for some speed, and he gave a similar substance to her. She ingested the substance and experienced feelings analogous to what she had experienced on the prior occasion. The court held this testimony insufficient.

Other cases are in agreement with those discussed above.

*Copeland v. State*, 430 N.E.2d 393 (Ind. App. 1982) (drug addict was legitimate expert, but evidence held insufficient because he only identified substance by sight and no evidence as to how he knew); *Warthan v. State*, 440 N.E.2d 657 (Ind. 1982) (witness testified that defendant represented substance on blotter paper to be LSD, and agent knew LSD generally sold in this form, but insufficient because conclusion that substance was LSD could only be garnered by the statements of the defendant); *State v. Starr*, 204 Mont. 210, 664 P.2d 893 (1983) (where State produced circumstantial evidence through field test that substance was cocaine, but subsequent evidence indicated that the substance could have been lidocaine, evidence of identity of drug insufficient); *State v. Frazier*, 162 W. Va. 602, 252 S.E.2d 39 (1979) (no objective factors were given or special familiarity shown other than witness' testimony that his past experience in smoking marijuana enabled him to identify cigarettes defendant gave him as containing marijuana); *In re Waylon M.*, 129 Cal. App. 3d 950, 181 Cal. Rptr. 413 (1982) (identification of a narcotic requires expert opinion, and a user can identify the drug only where there is evidence that the user knows the nature of the drug due to past use; here, witness did not testify as to his past use or as to the effects).

From this exhaustive review of the factors courts consider important in determining whether a substance is sufficiently identified by circumstantial evidence, we now turn to the identification evidence offered in this action. The State began the prosecution by calling James Parish, a member of the Nebraska State Patrol, to the stand. Parish testified that he had been working with drug investigations for 5 years and had extensive training in drug cases, including work as an undercover agent investigating suspected cocaine dealers. He described cocaine as a white or off-white fluffy powder, which is most commonly ingested by snorting the substance through the nose. Parish also testified that the drug is usually laid out on a mirror and that a razor blade is used to break up any chunks in the drug and to push the cocaine into "lines" to facilitate ingestion. The drug is then snorted through a straw or a rolled up dollar bill. He stated that a tapping sound is often associated

with preparing the drug for ingestion because the cocaine often sticks to the razor blade and must be tapped on the mirror to remove any residue of the drug from the surface of the blade. Common slang words for cocaine include "nose candy," and this drug numbs the nose of the user when it is being snorted.

Parish also testified as to the drug methamphetamine. He described methamphetamine as physically similar to cocaine. It ranges in color from white to off-white and is generally not as "crystally" as cocaine. Parish stated that methamphetamine is generally snorted like cocaine but that it burns the nose of the user when it is being ingested. Additionally, Parish testified that the effects of methamphetamine are longer lasting than the effects of cocaine. The paraphernalia needed to prepare methamphetamine for ingestion is the same as cocaine. Some of the slang terms for this drug are "crank" and "crystal."

The State then called Lackey to the stand to assist in identifying the drugs in question. She testified that she had no experience with cocaine or methamphetamine before she met the appellant. As for her subsequent use of drugs, she only testified regarding her experiences on the three occasions that were the bases of the charges against the defendant. Lackey stated that on March 14, she ingested a substance referred to by the appellant as "crystal" or "crank." She further testified that this drug made her feel "wiry" and "hyper" and burned her nose very badly. She testified that it looked off-white and grainy and that the effect lasted several hours; however, she ingested the substance three other times that night. The day after taking the substance she was very ill. Regarding the events of June 6, Lackey testified that she and the appellant did several grams of a substance Watson called "nose candy." She stated that the substance was snorted and did not burn her nose like the substance ingested on March 14. Physically, the substance was described as very white and of a powdery texture. In comparing the effects of the two drugs, Lackey stated that the "nose candy" was "more mellow" than the substance she took on March 14.

As for the substance that Lackey ingested on October 6, Lackey testified that she and the appellant ingested a substance referred to by the appellant as "nose candy." She did not testify

as to the effect the drug had upon her on this particular occasion, but described in detail the method used to ingest the substance and recalled ingesting the substance 3 or 4 times on that date. When the video made on October 6 was introduced into evidence, Lackey explained the various scenes, pointed out the location of the drug in the room, and explained the tapping noise that was heard on the tape as Watson drawing the "lines" to prepare the substance to be snorted. This was the extent of the evidence that the prosecution adduced to identify the substance as cocaine.

Although Lackey did not have a lot of experience with the drug in question, enough factors exist in this case to establish the identity of cocaine beyond a reasonable doubt. The following factors are present in this case: (1) references and representations made by the defendant as to the identity of the drug (Lackey testified that the appellant called the substance "nose candy" as opposed to "crystal," a term he had used on a prior occasion to identify a drug that burned the witness' nose); (2) behavior characteristic of use or possession of the particular controlled substance (as Parish testified, the drug was snorted through the nose and a blade was used on a mirror to "cut up" any chunks found in the substance; the sound of the blade tapping the mirror could be heard clearly on the videotape); (3) corroborating testimony as to the expected effects of the drug (Parish did testify regarding the expected effects of both methamphetamine and cocaine and distinguished the two; additionally, from a review of the portions of the tape that were admitted into evidence, it is obvious the two were consuming a controlled substance). Therefore, this assignment of error is without merit.

Secondly, the appellant assigns as error the admission of the unedited portion of the videotape in the rebuttal portion of the State's case. The trial court upheld the admission of the tape, ruling that it was proper impeachment for a number of reasons, including: (1) There was a factual dispute as to who was in charge of making the videotape, with an inference to be made from that fact regarding who was in charge of furnishing the alleged controlled substance; (2) credibility of the appellant and Lackey is the major issue in this case, and the defense was based

upon the assertion that Lackey set up the making of the video on October 6 for purposes of extortion, while Lackey testified that the defendant was in charge and provided the drug; and (3) there was testimony that the appellant had limited or no knowledge of the use of drugs prior to October 6, and his actions on the tape tended to show that he knew how to use the drugs.

In order to sustain an objection to admission of the videotape, the defense was required to show that the proffered evidence met the prejudice standard delineated in § 27-403. "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ." Following a review of the videotape, we see nothing that would support a finding that the probative value of the film is *substantially* outweighed by the danger of unfair prejudice to the appellant, confusion of the issues, or misleading the jury.

Because we find both assignments of error to be without merit, the conviction and subsequent sentence of the appellant must be affirmed.

AFFIRMED.

WHITE, J., dissenting.

The experience of Lackey with cocaine, when compared to the cases relied upon by the majority, is clearly insufficient. Lackey testified that she had not used cocaine or methamphetamine before she met the appellant. I believe the majority appropriately characterizes the testimony of Lackey. However, her broad general statements in contrasting the two drugs, that "nose candy" was "more mellow" than the substance referred to by the appellant as "crystal" and that "crystal" burned her nose very badly, while "nose candy" did not, seem hardly an adequate basis upon which to sustain a conviction. Instead, her testimony more closely resembles that found insufficient in *People v. Kenny*, 30 N.Y.2d 154, 282 N.E.2d 295, 331 N.Y.S.2d 392 (1972); *Jenkins v. State*, 46 Ala. App. 719, 248 So. 2d 758 (1971); *People v. McLean*, 56 Cal. 2d 660, 365 P.2d 403, 16 Cal. Rptr. 347 (1961); and *State v. Hutton*, 7 Wash. App. 726, 502 P.2d 1037 (1972).

Without either direct evidence of the chemical content of the

substance or circumstantial evidence that the substance was cocaine beyond a reasonable doubt, this conviction cannot be sustained.