# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

STATE OF WASHINGTON, )
                             )    No. 71863-1-I

Appellant, )

                             )    DIVISION ONE

v. )

                             )

RANDY EUGENE SIMMS, )    UNPUBLISHED OPINION

                             )

Respondent. )    FILED: <u>September 14, 2015</u>

SPEARMAN, C.J. — Randy Eugene Simms was convicted of two counts of delivering the controlled substance methamphetamine to a minor.[1] He argues that the evidence is insufficient to support his conviction for many reasons, including the fact that there was no test confirming that the substance was methamphetamine. Simms also argues that he did not receive fair notice of the charges because the jury instruction contained an alternative means of conviction. We reject each of his arguments and affirm. However, because Simms was improperly ordered to undergo the human immunodeficiency virus (HIV) testing, we remand for correction of the error.

---

[1] Although Simms was also convicted of sexual exploitation of a minor, we do not recite the underlying facts of that charge because on appeal Simms does not challenge the conviction, only a condition of his sentence.

FACTS

In May 2011, Simms spent considerable time with teenagers P.I. and her boyfriend N. B., when they were fifteen and sixteen years old, respectively. N.B.'s father had asked Simms to speak to his son about the dangers of drug use after N.B. had been hospitalized after consuming a controlled substance. Simms began spending time with N.B. and P.I. on a regular basis, purportedly teaching N.B. about car mechanics. The trio would often drive around and spend time in the woods near Issaquah or Ravensdale.

P.I. and N.B. asked Simms if he could get them methamphetamine because they wanted to try it. Simms brought a substance he referred to as "meth" on one of their trips to the woods. Verbatim Report of Proceedings (VRP) (Feb. 3, 2014) at 103. Simms brought a clear glass pipe and showed N.B. and P.I. how to smoke it. P.I. estimated that she smoked this substance with Simms approximately a dozen times and N.B. thought he and Simms had smoked it together "well over thirty" times. VRP (Feb. 4. 2014) at 102. Each time Simms supplied the substance, N.B. gave Simms money that N.B. had received from his father. In addition, Simms would occasionally smoke marijuana with N.B. and P.I., when N.B. had the drug.

In the summer of 2011, P.I. moved to her mother's home in Reno while Simms and N.B. continued spending time together. At one point they went fishing on the Olympic Peninsula for several weeks and smoked meth often during that trip. After the trip, N.B. entered inpatient drug treatment and told a counselor about Simms providing him with methamphetamine. The counselor then told the

2

police. Simms was arrested and charged with two counts of violating the Uniform Controlled Substance Act (VUCSA) by delivering methamphetamine to a minor and one count of sexual exploitation of a minor.

At trial, P.I. testified that she first smoked methamphetamine with Simms and N.B., in Simms' car. She testified that Simms referred to the drug as "meth" and not anything else, but that she and N.B. would refer to it as "bree." Id. at (Feb. 4, 2014) at 23. P.I. also described the pipe as "clear," a "ball with a stem," and drew a picture, indicating where one would put the drug, where to put one's mouth to inhale, and where to light the pipe. VRP (Feb. 4, 2014) at 104. She described inhaling the smoke, and how it caused her to feel "a rush, an endorphin rush." Id. at 107. P.I. also described the drug's appearance as "crystals," that were "see-through." Id. at 106. She thought that she had smoked methamphetamine with Simms "[m]aybe a dozen" times. Id. at 110. She testified that she had used methamphetamine on other occasions, and its effect on her was the same.

N.B. testified that he first tried methamphetamine with Simms, but could not remember exactly how it came up. He thought that P.I. had sent Simms some text messages asking about methamphetamine and ecstasy and then Simms brought it with him on one of their trips to the woods. He testified that Simms told him that it was "nothing like weed" and that the "high [was] a lot different." VRP (Feb. 4, 2014) at 99. N.B. described in detail the pipe and the process of smoking the drug, its crystal form and the way it melted and then recrystallized. He described the feeling as "uppy" and that it "[g]ave [him] a bunch of energy." Id. at

3

101. He compared it to the high he would get from weed, stating that weed gave him a "kind of relaxed, downy feeling," but with methamphetamine, "it's a really energetic type of feeling. . . . You feel like you want to get a lot of things done." Id. at 105. According to him, the energetic feeling would last for about four or five hours and then he would feel tired and "[u]sually felt the need to go to sleep or something." Id. Occasionally he would smoke weed with Simms, if N.B. "had it ... but usually no." Id. at 117: N.B. had also used methamphetamine at least one subsequent occasion, without Simms, and that it had felt "close to the same." Id. at 122.

Toxicologist Brianna Peterson testified about her training and expertise in the specific effects of methamphetamine. She described methamphetamine as a "central nervous stimulant" that "increases your energy,...causes a lot of euphoria or good feelings,... can cause you to have ... a heightened sense of... your own strength or well-being." VRP (Feb. 5, 2014) at 12. According to Peterson, the effect can last "four to eight hours after that initial use." Id. at 12. She also described the potential after effect of taking methamphetamine as "hav[ing] maybe more fatigue, because you don't have that energy," and "agitation or restlessness." Id. at 13. She also testified that other drugs may produce a similar effect, such as amphetamines and ecstasy.

The jury also heard testimony from forensic scientist Martin McDermott. McDermott testified about his familiarity with methamphetamine through his work with the Washington State Patrol Crime Laboratory in the chemical analysis section. He testified about most often seeing in methamphetamine cases "a glass

tube pipe" that is "typically a clear glass tube a few inches long, ... with sort of a glass ball on one end of it." Id. (Feb. 5, 2014) at 122. He indicated that when he has encountered such a pipe, "the vast majority of the time it has been [used for] methamphetamine." VRP (Feb. 5, 2014) at 124. He indicated that "the typical cocaine pipe ... looks distinctly different from this, as well as does the typical marijuana pipe that I see. And it has been my experience that it's pretty reliable that a person would use one type or another for a certain drug." Id. at 124. McDermott testified that he did not do any testing of substances or receive any pipes related to the instances in this case.

Both parties submitted proposed jury instructions to the court. During the discussion about the "to convict" instruction, the parties and the court agreed to change the word "distribution" to "delivery." VRP (Feb. 11, 2014) at 12-14.The State suggested that the instruction "just includes delivering a controlled substance" without reference to RCW 69.50.401. Id. at 13. The court and the parties agreed to delete the statutory reference because providing that kind of information to a jury invites them to go and do research.

The instruction given to the jury read:

> To convict the defendant of the crime of Violation of the Uniform Controlled Substances Act—Delivery of a Controlled Substance to a Person Under Age Eighteen, as charged in Count 1, each of the following elements of the crime must be proved beyond a reasonable doubt:
>> (1) That during a period of time intervening between April 1, 2011 and July 30, 2011, the defendant delivered a controlled substance to P.I.;
>> (2) That the defendant was over 18 years of age;
>> (3) That P.I. was under 18 years of age;
>> (4) That the defendant knew the substance delivered was a controlled substance; and

(5) That the acts occurred in the State of Washington.

Clerk's Papers (CP) at 59. Additionally, Instruction No. 9 stated that "[m]ethamphetamine is a controlled substance." CP 57. No other drugs or chemicals were defined in the instructions as controlled substances. Simms did not object to any of the jury instructions.

The jury found Simms guilty of both VUCSA counts and the charge of sexual exploitation of a minor. He was sentenced to sixty months of incarceration. Simms was also ordered to undergo an HIV test under RCW 70.24.340. Simms appeals.

<u>DISCUSSION</u>

The first issue is whether sufficient evidence supports Simms' conviction for delivery of a controlled substance, methamphetamine, as charged in counts one and two. Simms argues that the evidence was insufficient to identify the substance as methamphetamine, because there was no chemist report, no drug tests or paraphernalia and no independent observations. We disagree.

Evidence is sufficient to support a conviction if, when viewed in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. <u>State v. Green</u>, 94 Wn.2d 216, 221, 616 P.2d 628 (1980). "[W]hen the sufficiency of the evidence is challenged in a criminal case, all reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant." <u>State v. Partin</u>, 88 Wn.2d 899, 906-07, 567 P.2d 1136 (1977) (quoting <u>State v. Woods</u>, 5 Wn. App. 399, 487 P.2d 624 (1971)). The trier of fact

6

judges the credibility of witnesses, and issues of credibility cannot be reviewed on appeal. State v. Camarillo, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

Generally, "a chemical analysis is not vital to uphold a conviction for possession of a controlled substance." State v. Colquitt, 133 Wn. App. 789, 796, 137 P.3d 892 (2006). Circumstantial evidence and lay testimony may be sufficient to establish the identity of a drug in a criminal case. State v. Hernandez, 85 Wn. App. 672-75, 935 P.2d 623 (1997). Lay witnesses may testify if they are familiar with the substance through prior use, trading, or law enforcement. Id. at 676. Circumstantial evidence may include the substance's packaging as well as its physical characteristics. Id. at 677.

When determining whether circumstantial evidence proves the identity of the substance beyond a reasonable doubt, courts have considered the following non-exhaustive list of factors:

> (1) testimony by witnesses who have a significant amount of experience with the drug in question, so that their identification of the drug as the same as the drug in their past experience is highly credible; (2) corroborating testimony by officers or other experts as to the identification of the substance; (3) references made to the drug by the defendant and others, either by the drug's name or a slang term commonly used to connote the drug; (4) prior involvement by the defendant in drug trafficking; (5) behavior characteristic of use or possession of the particular controlled substance; and (6) sensory identification of the substance if the substance is sufficiently unique.

Colquitt, 133 Wn. App. at 801 (citing State v. Watson, 231 Neb. 507, 514-17, 437 N.W.2d 142 (1989)).

Simms argues that the evidence was insufficient because there were no field tests, no paraphernalia found, no confession, no visual comparison by

experts, and no text messages referring to methamphetamine. Simms relies on Colquitt, where the court reversed Colquitt's conviction, even with a field test, because the only evidence the State submitted was the arresting officer's statement that the substance "appeared to be 'rock cocaine.'" Without more, the court was unable to "draw a conclusion based on more than the officer's bald statement, which by itself is insufficient." Id. at 802.

Here, the combined evidence, when viewed in the light most favorable to the State, is sufficient to convince a trier of fact that Simms delivered methamphetamine to a minor beyond a reasonable doubt. First, the record contains testimony from both P.I. and N.B. about the drug's appearance and method of use, the number of times they had used it with Simms, and its effect on them compared to other drugs they have used. They also described subsequent experiences they had had with methamphetamine as similar to the times they used it with Simms.

Second, P.I. and N.B.'s descriptions are supported by testimony from the expert witnesses about the characteristics of methamphetamine, its effects on the user, and the type of pipe associated with it. Third, the record contains evidence of Simms and others referring to the substance as methamphetamine. Finally, the testimony from P.I. and N.B. included descriptions of the drug's appearance and the pipe used that, combined with the expert testimony, suggested that methamphetamine was sufficiently unique and could be distinguished from other drugs based on the witnesses' descriptions.

In sum, we find that a jury could reasonably infer from this evidence that the substance Simms gave to P.I. and N. B was methamphetamine. Simms argues that the witness testimony and opinions were "inexpert" and "nonspecific, generic" and "ambiguous." Reply Br. at 4-5. These are issues of credibility that cannot be reviewed upon appeal. See Camarillo, 115 Wn.2d at 571.

### Jury Instruction/Uncharged Alternative Means

Simms argues that he did not receive fair notice of the charged offense, because in the information he was specifically charged with delivery of methamphetamine, but at trial he was accused and convicted of delivering any "controlled substance." Brief of Appellant at 16. The "to convict" instruction did not "clearly and specifically limit[_] the jury's verdict to delivery of the charged substance, methamphetamine." Id. According to him, jurors may "have been convinced that [he] gave them some kind of drug but not the charged drug methamphetamine," and they "may not have unanimously agreed on the type of controlled substance delivered." Br. of Appellant at 17. Simms contends that the prosecution's arguments and court's instructions undermined Simms' right to a fair trial and unanimous jury verdict on identity of controlled substance. We review de novo whether a jury instruction accurately states the law without misleading the jury. State v. Chino, 117 Wn. App. 531, 538, 72 P.3d 256 (2003).

The State contends Simms did not properly preserve this issue for review because below he failed to take exception to the instruction of which he now

9

complains.[2] Thus, according to the State, review of this issue is precluded under RAP 2.5(a) which provides that the appellate court may refuse to review any claim of error which was not raised in the trial court.

Simms does not dispute that he did not object to the instruction below, but argues that he falls within the exception provided in RAP 2.5(a)(3) which permits a claim of error to be raised for the first time on appeal where it is a "manifest error affecting a constitutional right." To fall within the exception, an appellant must demonstrate (1) that the error is manifest, and (2) the error is truly of constitutional dimension. State v. Kirkman, 159 Wn.2d 918, 926, 155 P.3d 125 (2007).

Simms argues that the error implicates his constitutional rights because "the constitution prohibits the court from instructing the jury on an uncharged alternative means of conviction. . . ." Br. of Appellant at 15. We agree. In analyzing the asserted constitutional interest, we look to the allegation of a constitutional violation, and the facts alleged, to determine whether, if true, the defendant's constitutional rights were violated. O'Hara, 167 Wn.2d at 98-99. It is

---

[2] The State also argues that any issue with the jury instructions arose as a result of invited error, because Simms proposed the to convict instruction that did not contain the definition of "controlled substance." The doctrine of invited error precludes a party from requesting an instruction at trial and then later on, seeking reversal on the basis of a claimed error in the instruction given at the defendant's request. State v. Henderson, 114 Wn.2d 867, 869, 792 P.2d 514 (1990). But the State concedes that the record does not contain a copy of the defense's proposed instructions and points only to the report of proceedings which reflects that Simms participated in discussions that resulted in the final draft of the instruction and that he did not take exception to the instruction. Because the record does not show that Simms proposed the instruction, we decline to apply the invited error doctrine. See State v. LeFaber, 128 Wn.2d 896, 904, 913 P.2d 369, n.1 (1996) (unable to preclude review based on invited error where the record was unclear as to whether defendant proposed instruction with similar language), abrogated on other grounds by State v. O'Hara, 167 Wn.2d 91, 101-02, 217 P.3d 756 (2009).

reversible error to try a defendant under an uncharged statutory alternative because it violates the defendant's right to notice of the crime charged. State v. Doogan, 82 Wn. App. 185, 188, 917 P.2d 155 (1996).

However, after determining the error is of constitutional magnitude, we must still determine whether the error was manifest. Manifest error under RAP 2.5(a)(3) requires a showing of actual prejudice. In order to show actual prejudice, there must be a "'plausible showing by the [appellant] that the asserted error had practical and identifiable consequences in the trial of the case.'" O'Hara, 167 Wn.2d at 99 (quoting Kirkman, at 935).

Simms argues that the lack of definition in the to convict instruction could have resulted in some jurors basing his conviction on a finding that he delivered marijuana to a minor. But he identifies little, other than speculation, to support this claim. Simms points to testimony that he smoked marijuana on a number of occasions with P.I. and N.B. But the record shows the likelihood that the jury considered marijuana as a basis for the charge was remote. At the beginning of the trial, the court advised the jury of the allegation against Simms that he "unlawfully and feloniously did deliver and distribute methamphetamine, a controlled substance to ... [N.B. and P.I.], a person who was under 18 years of age. . . ." VRP (Jan. 27, 2014) at 21-22. The only controlled substance mentioned in the court's instructions to the jury was methamphetamine. ("Methamphetamine is a controlled substance."). CP at 57.

Furthermore, during closing arguments the State and Simms made it abundantly clear that the charge for the jury to consider involved only

methamphetamine and not some other drug. The State referred to Instruction No. 12 (the to convict instruction) and the "elements that the State has to prove." VRP (Feb. 11, 2014) at 28. She noted that "Count 1 is delivery of methamphetamine to a minor, a controlled substance to a minor." Id. Simms' attorney also drove the point home, stating that Simms "[was] not charged with supplying them with pot, that's not really relevant to the charges against him." VRP (Feb. 11, 2014) at 42. Because the record does not support a finding of manifest error affecting a constitutional right, we decline to review this claim of error raised for the first time on appeal.

Simms submits a statement of additional grounds in which he raises challenges to the sufficiency of the evidence and witness credibility. A defendant may submit a pro se statement of additional grounds for review pursuant to RAP 10.10. Such statement must "'inform the court of the nature and occurrence of [the] alleged errors.'" State v. Meneses, 149 Wn. App. 707, 715-16, 205 P.3d 916 (2009). Simms argues that there was no evidence that he took the pictures, because they were not from any one of his phones. He also claims that P.I. and N.B. were not credible witnesses, because they lied about other events and had a motive to retaliate against him. Again, we defer to the jury's determinations regarding the persuasiveness of the evidence and the credibility of witnesses; we will not reweigh the evidence and substitute our judgment for that of the jury.

Finally, Simms argues that he was improperly ordered to submit to HIV testing under RCW 70.24.340(1). The statute imposes HIV testing and counseling of all persons:

    (a) Convicted of a sexual offense under chapter 9A.44 RCW;

    (b) Convicted of prostitution or offenses relating to prostitution under chapter 9A.88.RCW; or

    (c) Convicted of drug offenses under chapter 69.50 RCW if the court determines at the time of conviction that the related drug offense is one associated with the use of hypodermic needles.

The State agrees that this condition was a scrivenor's error; Simms was not convicted of a sexual offense under Chapter 9A.44 RCW, nor was the drug offense related to his conviction associated with the use of hypodermic needles.

We therefore remand for revision of the judgment and sentence accordingly.

    Affirm, but remand to strike the HIV testing requirement.

WE CONCUR:

_Spearman, C.J._

_Becker, J._